Gunther GRAEFENHAIN and Philip Miller, Plaintiffs,

v.

PABST BREWING COMPANY, Defendant.

No. 83–C–1670.

United States District Court, E.D. Wisconsin.

Dec. 15, 1987.

Frank J. Schiro, Milwaukee, Wis., for Graefenhain.

Leonard Flamm, Hockert & Flamm, New York City, for Miller.

John R. Sapp, Thomas Bodar, Michael, Best & Friedrich, Milwaukee, Wis., for Pabst Brewing Co.

### DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Pursuant to the remand of the court of appeals for the seventh circuit and my decision and order of September 14, 1987, 670 F.Supp. 1415, this case is here for a reconsideration of Philip Miller's front pay damage award. At the conclusion of an evidentiary hearing on this issue, the parties requested and received an opportunity to file post-hearing briefs. The briefing is now complete, and the issue is ready for resolution.

In my September decision and order, I noted that front pay, rather than reinstatement, is the appropriate remedy for Philip Miller. That conclusion was based on a reexamination of the law of this circuit, in particular, *McNeil v. Economics Lab., Inc.*, 800 F.2d 111 (7th Cir.1986), and the relevant factors contained therein. Applying the *McNeil* factors, I deemed it advisable to revise my original ruling on front pay with respect to Mr. Miller. Accordingly, I scheduled the evidentiary hearing alluded to above in order to address further Mr. Miller's entitlement to front pay in light of Pabst's reduction in sales force and the amount of any such award.

■ Despite the defendant's urging, Mr. Miller's failure to follow up on the company's in-court offer of reinstatement will not be deemed a bar to an award of front pay. My original order regarding reinstatement did not specifically indicate which party had the laboring oar on the reinstatement process. Any award for front pay should be calculated according to the court of appeals' directive and the mandate of my September 14, 1987, decision and order.

■ With regard to front pay, however, I am now persuaded that Mr. Miller is entitled to such damages only for a period of approximately five months: from the date of the original jury verdict in this case, October 11, 1984, until March 19,

1985, the date on which Pabst underwent a significant reduction in its sales force. As noted in my September ruling, Pabst had the burden of establishing that Mr. Miller's position would have been legitimately terminated during the company's 1985 reduction in force. *See Archambault v. United Computing Systems*, 786 F.2d 1507, 1508 (11th Cir.1986). In my opinion, the defendant has adequately established that Mr. Miller would have been lawfully discharged from his sales position on March 19, 1985. The plaintiff is, therefore, entitled to award of front pay in the amount of $23,000.

*Front Pay Period*

The evidence adduced at the evidentiary hearing established that only nine individuals were retained by the defendant company in some sort of sales capacity immediately after the reduction in sales force on March 19, 1985. Before the reduction, the sales staff numbered approximately 125. *See Testimony of Gary Lewitzke, Industrial Relations Manager for the Pabst Brewing Company*, Tr. at 23–25. *See also* Defendants' Exhibit 1. One of Mr. Miller's direct successors at Pabst, Joseph Leuzze, Jr., was discharged on March 19, 1985. *See* Defendant's Exhibit 2. Further, Gary Lewitzke opined at the front pay hearing that Mr. Miller's qualifications rendered him a likely candidate for termination during the 1985 reduction in force. *Testimony of Gary Lewitzke*, Tr. at 31.

The plaintiff submitted evidence at the hearing that six Pabst sales employees who were discharged on March 19, 1985, were eventually rehired by the company. *See* Plaintiff's Exhibit B. However, in light of the defendant's strong showing, it would be mere speculation to conclude that the "rehire" evidence would justify a finding that Mr. Miller would also have been rehired. Certainly, as the plaintiff pointed out, there were sales persons operating for Pabst in Mr. Miller's former territory, but this is not sufficient to negate Pabst's showing that Mr. Miller likely would have been terminated on March 19, 1985, along with the vast majority of the brewery's sales force. "The fact that these responsibilities were assumed by others is a mere

biproduct of the reorganization." *Archambault*, 786 F.2d at 1515.

Even the plaintiff recognizes that job insecurity was prevalent prior to the company's reorganization. *See* Post-Hearing Memorandum of Plaintiff Philip Miller at 13 n. 2. Mr. Miller's contention that "there is abundant evidence that he would he would nonetheless have been promptly recalled in any event within six to nine months thereafter," *Post-Hearing Memorandum of Plaintiff Philip Miller* at 14, tends to counter Pabst's showing. However, I find that there is not "abundant evidence" on this point. Even the possibility that Mr. Miller, like a very small percentage of his former coworkers, would be called back, is too speculative to override Pabst's showing.

*Amount of Award*

■ Although the defendant had the burden to prove that Mr. Miller would have been lawfully terminated in March 1985 in order to limit any award of front pay, it was the plaintiff's burden to establish the *amount* of any such award. *See Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 n. 7 (8th Cir.1982). Mr. Miller has failed to discharge this burden.

Thomas Custis, a consulting actuary, was called to testify by the plaintiff's counsel. Mr. Custis' explanations and work papers do not fully address the relevant front pay period. Mr. Curtis, at the request of the plaintiff's counsel, only put forth front pay projections based on the assumption that Mr. Miller would remain employed with Pabst until his 70th birthday in 1989. Moreover, Mr. Custis' projections were based upon at least one questionable assumption: that Mr. Miller would receive 8% annual salary increases. This assumption was successfully challenged by the defendant. Even Mr. Custis agreed that for the period under examination, annual salary increases typically ranged from 0–6%.

In my opinion, extrapolating from Mr. Custis' testimony to arrive at a front pay award reflecting a March 1985 discharge is speculative and will not, therefore, support a judgment for front pay damages. Ac-

cordingly, I conclude that the plaintiff has not satisfied *his* burden of proof on the calculation of front pay.

The defendant concedes that if the plaintiff is deemed by the court to have been legally discharged on March 19, 1985, Mr. Miller's front pay award would be $23,000, the sum of his net lost wages and present value of net lost pension benefits. *See Defendant's Brief After September 1987 Damages Hearing* at 7. Having considered the plaintiff's actuarial evidence as well as the other damages evidence proffered at the most recent hearing, I am persuaded that a $23,000 award is neither an unfair nor an unrealistic quantification of the front pay losses suffered by Philip Miller. This front pay award is not subject to doubling, *see, e.g., Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1258 (2d Cir.1987). Furthermore, because Mr. Miller has already been awarded liquidated damages, he may not also recover prejudgment interest. *See Kossman v. Calumet County*, 800 F.2d 697, 702–03 (7th Cir. 1986).

## CONCLUSION

As noted in my decision and order of September 14, 1987, prevailing ADEA plaintiffs are entitled to an award of reasonable attorneys' fees together with costs pursuant to 42 U.S.C. § 1988. Plaintiffs Gunther Graefenhain and Philip Miller should each submit a bill of costs and application for fees in accordance with Rule 54(d), Federal Rules of Civil Procedure and the Local Rules 9.01–9.04 of this district following the clerk's entry of judgment in this action. These matters will then be addressed by the court.

Therefore, IT IS ORDERED that the plaintiff, Philip Miller, be and hereby is entitled to the entry of judgment against the defendant Pabst Brewing Company for front pay damages in the amount of $23,-000.