Gunther GRAEFENHAIN and Philip Miller, Plaintiffs–Appellants, Cross–Appellees,

v.

PABST BREWING COMPANY, Defendant–Appellee, Cross–Appellant.

Nos. 88–1408, 88–1429.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1988.

Decided March 7, 1989.

Leonard N. Flamm, Hockert & Flamm, New York City, Frank Joseph Schiro, Frank Joseph Schiro, Ltd., Milwaukee, Wis., for plaintiffs-appellants, cross-appellees.

James A. Bowles, Hill Farrer & Burrill, Los Angeles, Cal., for defendant-appellee, cross-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

In this appeal, appellants Gunther Graefenhain and Philip Miller and cross-appellant Pabst Brewing Company raise a plethora of issues surrounding the award of front pay damages under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634. In a prior appeal, we reversed the district court's grant of judgment n.o.v. to Pabst, and reinstated the jury's finding that Pabst had willfully violated the ADEA. *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13 (7th Cir.1987). On remand, the district court determined that Miller was entitled to front pay; after an evidentiary hearing the court awarded front pay in an amount it considered appropriate. The court held that Graefenhain was not entitled to front pay in any amount since his severance payments from Pabst and salary from his new job left him, in the aggregate, in a better financial position than if he had remained with Pabst. The parties appeal various aspects of these rulings. After a careful review of the applica-

ble law and the record in this case, we affirm the district court's judgment in all respects, with one exception: the court deducted pension benefits received by Miller from his front pay award without considering all the factors relevant to this issue, necessitating a limited remand to allow the district court to reassess this aspect of Miller's damages. The facts relevant to our disposition of the various issues are stated in the body of our opinion.

Before considering the issues raised by the parties, it is important to stress the standard of appellate review applicable to an award of front pay. As an equitable remedy, the district court has discretion to decide whether to award front pay; the district court's decision will be overturned on appeal only if it constitutes an abuse of discretion. *Rengers v. WCLR Radio Station,* 825 F.2d 160, 163 n. 1 (7th Cir.1987), *vacated,* — U.S. —, 108 S.Ct. 1990, 100 L.Ed.2d 223 *on remand,* 857 F.2d 363 (7th Cir.1988); *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 119 (7th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). "Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." *United States v. $103,387.27 in U.S. Currency,* 863 F.2d 555, 561 (7th Cir.1988). Factual determinations made by the district court as a predicate to its award will be upset only if "clearly erroneous," Fed.R.Civ.P. 52(a); the reviewing court must be left "with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.,* 333 U.S. 364, 375, 68 S.Ct. 525, 532, 92 L.Ed. 746 (1948).[1] Although the parties have selectively invoked and then ignored these sharply limited standards of review, we have attempted to

---

1. *See also Anderson v. Bessemer City,* 470 U.S. 564, 572–75, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); *Jennings v. Tinley Park Community Consol. School Dist. No. 146,* 864 F.2d 1368, 1372–74 (7th Cir.1988); *United States v. Ataya,* 864 F.2d 1324, 1337–38 (7th Cir.1988); *Parts &*

*Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988) ("To be clearly erroneous, a decision must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.").

apply these standards as evenhandedly as possible.

## I.

### Appeal of Miller and Pabst's Cross–Appeal

At the end of the initial liability trial, the district court held that Miller was not entitled to front pay, since he had "failed to establish that reinstatement was either infeasible or inappropriate." *Graefenhain v. Pabst Brewing Co.*, No. 83 C 1670, mem. op. at 9 (E.D.Wis. Mar. 11, 1985). Miller moved to alter or amend the court's front pay judgment on March 22. However, this motion was mooted by the district court's grant of judgment n.o.v. to Pabst on November 2, 1985. 620 F.Supp. 696. This court reversed the trial court's grant of judgment n.o.v., and remanded so that the jury's verdict in favor of Miller and Graefenhain could be reinstated. *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13 (1987). We noted that, "[b]y reason of our reversal, plaintiffs' motion [to amend the front pay award] is again ripe for consideration by the district court." *Id.* at 23.

On remand, the district court determined that Miller was in fact entitled to front pay; the court scheduled an evidentiary hearing to determine the amount of front pay which should be awarded. 670 F.Supp. 1415, 1418–20 (E.D.Wis.1987). Prior to the first appeal, the parties had agreed to try damages questions, including the issue of front pay, to the court. *See* mem. op. at 2 (E.D.Wis. Mar. 11, 1985). On remand, Miller requested a jury trial of these issues. He argued that he should be relieved of his prior stipulation because circumstances had changed dramatically in the two and one-half years between the initial damages hearing and the hearing on remand. The district court refused to rescind the prior agreement, and front pay issues were once again tried to the court. 670 F.Supp. 1420, 1421 (E.D.Wis.1987). At the hearing, the court considered the reduction in force ("RIF") which Pabst had instituted in March, 1985, after the initial trial and damages award. The court concluded that Miller's employment would have been terminated in the RIF. Since a legitimate, nondiscriminatory reason for discharge terminated the accrual of damages, the court held that Miller was entitled to front pay for only five months, up to the time when he would have been terminated in the RIF.

### A.

We initially address Pabst's cross-appeal. Pabst argues that the district court erred in awarding Miller *any* front pay, for two reasons: first, Miller refused Pabst's unconditional offer of reinstatement, which absolved Pabst of any liability for front pay; second, front pay damages were inappropriate because Miller had been awarded substantial liquidated damages. We consider these issues in turn.

### 1.

In *Ford Motor Co. v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." *Id.* at 241, 102 S.Ct. at 3070. But not every offer of reinstatement tolls the accrual of an employer's liability. An employee's obligation to accept an offer of reinstatement is based on the general rule that a discharged employee must mitigate damages by using "reasonable diligence in finding other *suitable employment.*" *Id.* at 231, 102 S.Ct. at 3065 (emphasis added). Under the mitigation doctrine, the employee "need not go into another line of work, accept a demotion, or take a demeaning position." *Id.* An employee "need not 'seek employment which is not consonant with his particular skills, background, and experience' or 'which involves conditions that are substantially more onerous than his previous position.'" *Id.* at 231 n. 16, 102 S.Ct. at 3065 n. 16 (quoting *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C. Cir.1972)).

Lower courts have recognized, both before and after *Ford Motor*, that "[i]n determining whether the right to relief extends beyond the date of an offer of reinstate-

ment, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." *Claiborne v. Illinois Central R.R.*, 583 F.2d 143, 153 (5th Cir.1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). An offer of reinstatement tolls the accrual of damages only if it "afford[s] the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).[2]

■ The accrual of damages for a discriminatory discharge is not terminated merely because the employee refuses an offer of reinstatement; instead, it is only "an *unreasonable* refusal ... [which] will preclude recovery of front pay." *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986) (emphasis added), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Since the employer bears the burden of proof as to the adequacy of an offer of reinstatement,[3] the employer must initially make an offer which is sufficiently specific to support a finding that the tendered employment is comparable to the employee's prior job. Only after receiving an appropriately detailed offer is the discharged employee required either to accept the offer or to provide specific reasons why it is inadequate.

Whether an offer of reinstatement is adequate to trigger the *Ford Motor* rule is largely a fact question, which requires

weighing the employee's prior experience and job skills against the terms and conditions of the offer. *Ortiz v. Bank of America Nat'l Trust & Sav. Ass'n,* 852 F.2d 383, 387 (9th Cir.1988); *EEOC v. Exxon Shipping Co.,* 745 F.2d 967, 978 (5th Cir.1984). Since predominantly factual, the trial court's determination as to the adequacy of a reinstatement offer will be upset on appeal only if clearly erroneous. To the extent Pabst's argument is premised on the district court's misinterpretation of one of its own orders, Pabst faces an equally heavy burden—the district court's interpretation will not be upset unless it constitutes a clear abuse of discretion, since "[f]ew persons are in a better position to understand the meaning of a [court order] than the district judge who oversaw and approved it." *United States v. Board of Educ.,* 717 F.2d 378, 382 (7th Cir.1983); *see also In re Chicago, Rock Island & Pac. R.R. Co.,* 865 F.2d 807, 810 (7th Cir.1988); *In re Chicago, Rock Island & Pac. R.R. Co.,* 860 F.2d 267, 272 (7th Cir.1988).

■ The district court did not clearly err in holding that Pabst's offer of reinstatement was inadequate to terminate the accrual of front pay liability. Pabst made its offer in court at the *close* of the initial damages hearing. Therefore Miller had no opportunity during the damages trial to question its adequacy. The offer consisted entirely of the following statement by Pabst's attorney:

[T]he Pabst Brewing Company would be willing to reinstate Mr. Miller.... We would like to make very clear ... that

**2.** *See also, O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1550–51 (11th Cir. 1984); *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 282–83 (8th Cir.1983) (employer must demonstrate that position offered was substantially equivalent to prior position); *Orzel v. City of Wauwatosa Fire Dep't,* 697 F.2d 743, 757 (7th Cir.) (reinstatement offer insufficient where, among other things, it failed to provide employee with written assurance of job security until age 60), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1139 (8th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); *Loubrido v. Hull Dobbs Co.,* 526 F.Supp. 1055, 1058 (D.P.R.1981) (offer of reinstatement must guarantee employee "a position of compa-

rable status, salary, benefits, and potential for advancement").

**3.** Once the employee has demonstrated entitlement to damages, the burden shifts to the employer to show that the employee's failure to mitigate damages should reduce the damages awarded. *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1234 (7th Cir.1986); *Nord v. U.S. Steel Corp.,* 758 F.2d 1462, 1470–71 (11th Cir. 1985); *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1307 (7th Cir.), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); *Huegel v. Tisch,* 683 F.Supp. 123, 125 (E.D.Pa. 1988).

there is no hostility from our standpoint toward either of these two Plaintiffs. Mr. Lyons, the gentleman with whom Mr. Miller had considerable difficulties, is no longer with the company, of course. I have with me today Mr. John Culhain, who is the General Counsel and Officer of Pabst and who has authorized us to make that offer of reinstatement to [Mr. Miller].

Trans. at 155 (E.D.Wis. Oct. 11, 1984). Despite Pabst's contention that its "unconditional" offer of reinstatement terminated its front pay liability, this offer hardly guarantees Miller a position substantially comparable to his previous job. Pabst's offer was "unconditional" only in the sense that it specified none of the conditions under which Miller would be reemployed; the district court could not conclude, based on this statement, that Miller had refused "comparable" or "suitable" employment.

Pabst also argues that the district court's order of March 11, 1985 placed the burden on Miller to accept or reject reinstatement with Pabst. The order provides:

> IT IS ALSO ORDERED that the defendant Pabst Brewing Company shall reinstate the plaintiff Philip Miller to his former position as sales manager of the defendant's Atlantic Division or to a position that is comparable in terms of compensation, responsibility, opportunity for advancement, and location. In reinstating Mr. Miller, the defendant shall restore to him his seniority status and all rights related to that status, including his lost pension benefits from the date of termination to the date of reinstatement.
>
> IT IS FURTHER ORDERED that the plaintiff Philip Miller be and hereby is entitled to judgment against the defendant Pabst Brewing Company for liquidated damages in the amount of $28,291. However, if within 20 days from the date of this decision and order, plaintiff Miller refuses reinstatement, then plaintiff Miller shall be entitled to judgment against the Pabst Brewing Company in the amount of $56,582 instead of $28,291.

Mem. op. at 28 (E.D.Wis. Mar. 11, 1985). Significantly, the district court did not refer to Pabst's prior offer in its order, and appeared to suggest that Pabst would be required to specify "comparable terms" before Miller would have to decide whether to accept reinstatement. The district court later determined that "[m]y original order regarding reinstatement did not specifically indicate which party had the laboring oar on the reinstatement process." 676 F.Supp. 909, 910 (E.D.Wis.1987). This construction is plausible, and will not be upset on appeal. Therefore, the district court correctly determined that Miller had not unreasonably refused an offer of reinstatement to a comparable position, and its award of front pay is not reversible on this ground.

Our approach is consistent with *Giandonato v. Sybron Corp.*, 804 F.2d 120 (10th Cir.1986), on which Pabst relies. In *Giandonato* the employer communicated its offer of reinstatement to the employee on five separate occasions, three times in writing. *Id.* at 125. The offer "would have reinstated Donato to his former position on comparable terms." *Id.* at 121. The Court noted that

> Sybron also agreed, at Donato's request, to: (1) fully reinstate Donato with no loss of service (a condition not necessary in *Ford Motor Company*), and no reduction in salary; (2) hire a new district manager so that Donato would not have to report to [his former supervisor]; (3) not change future territory, accounts, and sales quotas except by written agreement between Donato and his manager; and (4) stipulate that Donato would not have to repay any of the severance pay he had received.

*Id.* at 124–25. The employee sought to justify his refusal of this detailed offer of reemployment by arguing that the offer was unacceptable because it contained too many "uncertainties". Given the specificity of the offer, it is hardly surprising that the Tenth Circuit held that the burden was on the employee to seek clarification of any remaining "uncertainties". The present case is a far cry from *Giandonato*.

### 2.

Pabst also argues that the district court abused its discretion when it awarded front pay since liquidated damages had been awarded based on the jury's finding that Pabst willfully violated the ADEA. *See* 29 U.S.C. § 626(b) (liquidated damages appropriate "in cases of willful violations"). At first glance, Pabst's argument might seem baseless since there would be no reason to view liquidated damages as a substitute for front pay. After all, liquidated damages have a punitive character and front pay is intended to serve as compensation. Indeed, the Supreme Court has held that "Congress intended for liquidated damages to be punitive in nature." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). Congress conceived of liquidated damages awards as "an effective deterrent to willful violations of the ADEA." *Id.; see also Coston v. Plitt Theatres, Inc.,* 860 F.2d 834, 835 (7th Cir.1988). Nonetheless, while liquidated damages serve a deterrent or punitive function, Congress also intended liquidated damages to serve as compensation for a discharged employee's nonpecuniary losses arising from the employer's willful misconduct. *See Kossman v. Calumet County,* 800 F.2d 697, 702 (7th Cir. 1986) ("Liquidated damages under the ADEA ... are intended to provide compensation for losses that cannot be calculated with certainty"), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987); *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 687 (7th Cir.) (liquidated damages award intended "to provide full compensatory relief for losses that are 'too obscure and difficult of proof for estimate other than by liquidated damages'") (quoting House Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.Code Cong. & Admin.News 504, 528, 535), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982). Thus both liquidated damages and front pay may be compensatory measures and, in appropriate cases, an award of liquidated damages may be considered in deciding whether plaintiff is entitled to front pay. *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987).

A substantial liquidated damages award only makes front pay less appropriate if a front pay award would be highly speculative due to the lengthy period for which damages are sought and the lack of certainty that plaintiff would have remained employed during such a lengthy period.[4] In the present case, Miller only received front pay for five months due to the district court's conclusion that he would have been terminated during Pabst's RIF. The grant of front pay in this case was hardly speculative or open-ended; it would not have been proper for the district court to deny front pay due to the liquidated damages award.

### B.

Miller argues that his prior stipulation that damages issues be tried to the court should not have barred him from obtaining a jury trial on remand from this court. He asserts that "[t]he stipulation only related to the District Court's deciding the *arithmetic calculation* of back pay damages at the October 11, 1984 trial. At that time, counsel for the parties could not possibly have contemplated the need for another evidentiary hearing. The stipulation did not extend to the non-arithmetic issue of whether Miller would have been terminated in the R.I.F." Appellants' Brief at 26–27 (emphasis in original).

A party may stipulate that certain issues be tried to the court after filing a valid demand for trial by jury. Fed.R.

---

4. *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985); *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1319 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Rengers v. WCLR Radio Station,* 661 F.Supp. 649, 650–51 (N.D.Ill.1986) (refusing to grant front pay where substantial liquidated damages awarded, since plaintiff sought front pay for nine years, and "job security for disc jockeys is quite tenuous"), *aff'd,* 825 F.2d 160 (7th Cir.1987), *vacated,* —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223, *on remand,* 857 F.2d 363 (7th Cir.1988).

Civ.P. 39(a).[5] Stipulations regarding the nature of trial proceedings are crucial to the prompt and efficient disposition of litigation. Therefore, once made, a stipulation is binding unless relief from the stipulation is necessary to prevent a "manifest injustice" or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law. *Smith v. Blackburn*, 785 F.2d 545, 549 (5th Cir. 1986); *L.P.S. by Kutz v. Lamm*, 708 F.2d 537, 539–40 (10th Cir.1983); *Ginsberg v. Burlington Indus., Inc.*, 500 F.Supp. 696, 699 (S.D.N.Y.1980). As with other matters of trial management, the district court has "broad discretion" to decide whether to hold a party to its stipulations; the district court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion. *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709–10 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1025, 98 L.Ed.2d 990 (1988); *Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 690–91 (7th Cir.1985).

■ Circumstances had changed between the time of Miller's stipulation to try damages issues to the court and the actual trial of those issues. At the damages trial, the complex factual issue of whether Miller would have been terminated in the RIF assumed center stage, while at the time of the stipulation the parties may have contemplated a fairly straightforward damages hearing, consisting largely of "arithmetic calculations." Although these considerations may have empowered the district court to exercise its discretion to void the prior agreement, the court's failure to do so was not an abuse of discretion. Miller believed he had a right to jury trial on front pay issues at the time of the stipulation, and therefore clearly thought that he was foregoing an available option. And there is no indication that Miller misunderstood the law of damages for wrongful discharge; he would have known that damages questions are often intensely fact-specific, requiring findings as to the plaintiff's

life expectancy, likelihood of obtaining alternate employment and so on. Where the party seeking relief from a stipulation understood the nature of the right he was renouncing, and the consequences of that renunciation, refusing to rescind a stipulation is not an abuse of discretion, unless circumstances have changed so dramatically that relief is necessary to prevent a "manifest injustice." *Cf. Cates*, 780 F.2d at 690–91. This is not a case in which the district court was required to relieve Miller of his stipulation. Since Miller waived any right to a jury he may have had, we need not address the difficult question whether a jury trial is available with respect to an award of front pay under the ADEA.

### C.

Prior to the front pay hearing, Pabst initiated a substantial reduction in force. In making its front pay determination, the district court took the RIF into account, and determined that Miller was entitled to only five months front pay since his position would have been eliminated for nondiscriminatory reasons quite apart from his discriminatory discharge.

Miller argues that the trial court should have made its front pay determination based only on facts known at the close of the initial liability trial, before Pabst's motion for judgment n.o.v. was granted and then reversed on appeal. Miller argues that the intervening occurrence of the RIF was not "newly discovered evidence," since it did not exist at the time of the initial trial, and therefore should not have been considered by the district court. Miller also asserts that consideration of this intervening event would result in manifest injustice, and would undermine the finality of front pay awards. Since we cannot accept Miller's arguments, we affirm the district court's judgment based on its consideration of the facts as they stood at the time it made its front pay determination.

---

5. *See Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 949–50 (10th Cir.1978); *DeGioia v. United States Lines Co.*, 304 F.2d 421, 424–25 & n. 1 (2d Cir.1962)

(Clark, J.) (following valid demand, party can only waive right to jury trial by explicit stipulation).

■ Our research has not revealed any precedent directly relevant to the issue Miller presents. However, a reversal and remand for a new trial is closely analogous, since both in this case and in a remand for new trial, an issue is being considered after a prior determination has been upset for reasons independent of intervening events.[6] Where a case has been remanded for a new trial, the trial court may consider events occurring after the initial trial.

> [T]he general rule [is] that upon a reversal and remand for further consistent proceedings the case goes back to the trial court and there stands for determination of the issues presented *as though they had not been determined before,* pursuant, of course, to the principles of law enunciated in the appellate court's opinion which must be taken as the law of the case at the new trial.

*United States v. Iriarte,* 166 F.2d 800, 803 (1st Cir.) (emphasis added), *cert. denied,* 335 U.S. 816, 69 S.Ct. 36, 93 L.Ed. 371 (1948).[7] For cases which have specifically approved the district court's consideration of facts arising after an initial trial, see *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1437 (9th Cir.1984) (approving admission of damages evidence arising after first trial); *Baskin v. Parker,* 602 F.2d 1205, 1210–11 (5th Cir.1979). The Eleventh Circuit also referred to this issue in the *Litman* case. *Litman* held that a party who had won a retrial on appeal could not waive retrial on remand without the consent of the other party and the district court. The court referred to the inequitable results which would occur under a contrary rule.

One of the court's examples addresses the precise issue involved here:

> [A] defendant in a personal injury action may successfully appeal an adverse verdict only to learn that the plaintiff has since died. In an attempt to minimize his exposure he decides to "waive" the order for a retrial on damages.

825 F.2d at 1515 n. 15. Clearly, this hypothetical assumes that on a retrial of damages, the parties could present whatever evidence existed as of the date of the retrial, regardless whether that evidence arose after the first trial.

In the present case the court vacated its prior front pay decision for reasons completely independent of the occurrence of the RIF. At the evidentiary hearing on front pay the district court properly considered the issues "as though they had not been determined before," and made factual findings based on the circumstances existing as of the time of its decision. Federal Rules of Civil Procedure 59 and 60(b)(2), which limit the use of "newly discovered evidence," simply have no application in this context.

Miller argues that several considerations support his position that the district court should not have considered the facts known at the time of the front pay hearing. He notes that a district court can consider the risk that an employee's job may be eliminated by making a downward adjustment to the front pay award. Miller argues from this noncontroversial premise that, once an award of front pay is made, there is no justification for reopening an award simply because the district court's assess-

---

**6.** In the prior appeal this court *reinstated* the trial result, rather than reversing. Therefore, any matter which had been finally concluded in the initial trial would not have been subject to reexamination. *Cf. Corex Corp. v. United States,* 638 F.2d 119, 121–22 (9th Cir.1981) (where appellate court has entered judgment, after occurring events may not be considered at the behest of the losing party on remand, since such events outside the scope of Rule 60(b)(2)). Further, factual developments occurring after trial are not themselves grounds for reversal. *See First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164, 1172 (9th Cir.), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). Instead, in this case we have an issue which had previously been finally determined, but as to which the court granted a motion for reconsideration for independent reasons. In this situation, events occurring after an initial trial may be considered.

**7.** *See also Litman v. Massachusetts Mutual Life Ins. Co.,* 825 F.2d 1506, 1514 & n. 12 (11th Cir.1987) (en banc), *cert. denied,* —— U.S. ——, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988); *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 950 (3d Cir.1985); *Poletti v. Commissioner,* 351 F.2d 345, 347 (8th Cir.1965); *Roth v. Hyer,* 142 F.2d 227, 229 (5th Cir.), *cert. denied,* 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944).

ment of the various contingencies proves to be incorrect. We agree wholeheartedly. In making a front pay determination, the district court must make numerous predictions, determining the plaintiff's life expectancy, the likelihood that the plaintiff will be promoted or given salary increases, the employer's financial stability, the prospect that the plaintiff's position may be eliminated and general economic conditions, such as the inflation and unemployment rates. Once the court has aggregated its evaluation of these factors into a single front pay award, a party may not seek to amend the award because the district court's subsidiary findings or predictions turn out to have been mistaken. But in this case, the district court reopened the front pay issue for reasons having no relation to the intervening events; therefore the considerations which support the finality of a front pay award, once entered, are not applicable here.

Miller next argues that, if the district court's front pay award is affirmed, he will in effect be penalized for the delay in litigating his entitlement to front pay, which occurred through no fault of his. Miller does not suggest that Pabst moved for judgment n.o.v. solely to deny him front pay; however, he does argue that our decision could prompt future employers to utilize delaying tactics to gain the advantages of RIF's which are in their incipiency at the time of an age discrimination case. There are several responses to Miller's concerns. First, our decision today does not "penalize" him in any way. Miller was entitled to be "made whole" for the injuries he suffered as a result of Pabst's discriminatory conduct; however, compensation does not include salary after the date when he would have been terminated for legitimate, nondiscriminatory reasons. Therefore, our decision insures that Miller receives full compensation, but no more. This is hardly a "penalty". Second, Miller's concern as to the possible dilatory tactics of other employers is premature; he does not argue that Pabst acted in bad faith in pursuing its litigation strategy, and we presume that, in the future, courts will be fully capable of

dealing with an employer's unnecessary delay if and when it does occur.

■ Finally, our decision is limited to a fairly uncommon situation, where a prior front pay ruling has been vacated on legal grounds but reconsideration of the issue has been delayed due to legitimate trial and appellate proceedings. Once a front pay award is made, it is not subject to reexamination merely because an intervening appeal has delayed the termination of litigation. The court may consider intervening events only if no front pay award has been made, or a front pay award has been vacated for independently sufficient reasons. This rule is hardly manipulable by the unscrupulous.

### D.

Miller also argues that the trial court improperly considered the date on which he would have been terminated for legitimate, nondiscriminatory reasons as a cut-off for the accrual of front pay. He contends that "the continued availability of the employee's former position provides a basis for reinstatement. Conversely, the non-existence of his position favors a grant, not a denial, of front pay." Miller characterizes the district court's opinion, which awarded *neither* reinstatement nor front pay, as employing an impermissible " 'Heads I win, Tails you lose' approach."

■ Miller's argument relies on a false dichotomy. There are not only two possibilities: that the employee's former job is available, or non-existent. A third option exists: the employee's job (or its equivalent) exists, but is not "available" to the employee, due for example to hostility between employer and employee, or the fact that someone else currently occupies the employee's former position. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1331 (7th Cir.1987), *vacated,* —— U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700, *reinstated in relevant part,* 860 F.2d 834, 835 (7th Cir. 1988); *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). This is the situation in which a district court may properly award

front pay rather than reinstatement. However, where the employer satisfies its burden of demonstrating that the employee would have lost his job based on legitimate, nondiscriminatory criteria, the award of front pay after the termination date is not appropriate. *Archambault v. United Computing Systems, Inc.,* 786 F.2d 1507, 1515 (11th Cir.1986); *Dillon v. Coles,* 746 F.2d 998, 1006 (3d Cir.1984); *Hill v. Spiegel, Inc.,* 708 F.2d 233, 238 (6th Cir.1983); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982).

### E.

As an alternative ground for reversal, Miller argues that the evidence was not sufficient to support the district court's finding that he would have been terminated in the RIF. Once again, we note that the district court's findings of fact are entitled to substantial deference, and will only be overturned if clearly erroneous. After a thorough review of the record, we have decided that the district court's conclusion that Miller would have been terminated in the RIF is not clearly erroneous. We therefore affirm the district court's order awarding Miller front pay for only five months, through the date of the RIF.

The primary basis for the district court's conclusion was the testimony of Gary Lewitzke, Industrial Relations Manager for Pabst. Lewitzke, whose responsibilities include a wide range of personnel matters, testified at length regarding the various restructurings and reorganizations of Pabst's sales force between 1981, when Miller was discharged, and the time of the hearing. Prior to 1984, Pabst's sales staff was organized into the following hierarchy: regional sales managers were, for present purposes, the highest ranking; below regional managers were division managers, and below them district sales managers. At the time of his discharge, Miller was a division sales manager. In 1984, Pabst eliminated this organizational structure in favor of an area manager system. The majority of area managers had previously been regional managers; however, "a couple" of district and division managers were promoted to the area manager position. S & P Company purchased Pabst in early 1985. This precipitated a major reduction in force in Pabst's sales staff in March, 1985. Prior to the takeover, Pabst had approximately 125 sales personnel; afterwards, only 9 sales personnel remained, all of whom were area managers.

Lewitzke indicated that the crucial issue in deciding whether a district or division manager would be promoted to area manager was whether that individual had experience with a specific territory of which no higher-ranking sales officer had adequate knowledge. In Miller's old territory, covering New York and New Jersey, two individuals, Allison and Breedlove, were retained. Allison was an area manager who had been promoted to that position in February of 1985; he had previously been a division manager with 23 years experience. (In 1985, Miller would have had *36 years* of seniority servicing the New York/New Jersey sales area.) Breedlove assumed the area manager position from his previous post as regional manager. The individual who directly succeeded Miller as division manager, Joseph Leuzze, was not retained in the March 1985 RIF. Based on his review of the personnel files of Allison, Breedlove and Miller, Lewitzke opined that Miller would not have been promoted to area manager. Therefore, in Lewitzke's opinion, Miller would have been terminated in the RIF.

Based on this evidence, it was clearly a close call whether Miller would have been retained after the RIF, especially since Pabst bore the burden of proof on this issue. However, while we might have decided the issue differently in the first instance, the district court's finding is not reversible. The magnitude of the cutbacks in Pabst's sales force, the fact that Miller would have had to receive a promotion in order to have even a chance of being retained, the fact that Breedlove, a higher-ranking officer, was given duties overlapping those of Miller, the fact that Miller's immediate successor was terminated and the (admittedly interested) opinion of Lewitzke that Miller would not have been retained, all support Judge Gordon's con-

clusion that Miller would have lost his job in the RIF. Under the clearly erroneous standard of review, we cannot upset this conclusion.

### F.

■ Miller also argues that the district court erroneously deducted pension benefits he had received from his front pay award. Whether to deduct pension benefits from a front pay award is a matter committed to the discretion of the trial court; the court must examine the nature of the particular employer's pension plan to determine whether a deduction is appropriate. *EEOC v. O'Grady*, 857 F.2d 383, 389–91 (7th Cir.1988). To decide the extent to which pension benefits received by a private sector employee should be offset against a front pay award, the court must determine whether the employee has reaped a greater benefit by receiving his pension payments early rather than at a later date. The employer is only entitled to a set-off for the difference between the amount the employee *did* receive and the amount he *would have* received but for his unlawful termination. *Id.* at 391 ("The collateral source rule should not afford a 'discrimination bonus' by allowing an adjudicated violator of the ADEA to pay less than it would have paid had it acted lawfully"); *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 87 (2d Cir.1983) (court must compare pension benefits discharged employee received with benefits employee would have received at retirement; employer only entitled to deduction for the difference).[8]

■ Miller argues in his appellate brief that the payments he received were "actuarially equivalent" to payments he would have received at his scheduled retirement date, and therefore that these payments should not have been deducted from his front pay award. Resolution of this question would require a detailed examination of the way in which Pabst administers its pension program and a finding as to whether the present value of the annuity Miller

received was indeed "actuarially equivalent" to the annuity he would have received had he not been illegally discharged. However, based on the present record, we are unable to determine whether the benefits Miller received due to his discharge were equal to, greater than or less than those he would have received if he had retired as planned. The district court did not have the benefit of our opinion in *EEOC v. O'Grady* when it ruled on the deductibility of pension benefits, and it therefore did not closely examine Pabst's pension plan. Since the district court did not determine whether Miller received greater pension benefits because of his discharge, we will vacate this aspect of the front pay award and remand for further consideration by the district court. On remand, the court should determine whether Miller received greater benefits through his early termination. If Miller would have been entitled to the identical pension benefit (adjusted to present value) had he retired normally, no deduction is appropriate.

### G.

■ Finally, Miller makes a series of objections to the front pay award which deserve only brief mention. First, he argues that the front pay award should have been doubled. However, ADEA's liquidated damages provision provides that only "amounts owing" as a result of a willful violation may be doubled. 29 U.S.C. § 626(b). Since front pay is a prospective remedy, an award of front pay damages is not an "amount owing" for purposes of section 626(b). *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1258–59 (2d Cir.1987); *Bhaya v. Westinghouse Elec. Corp.*, 624 F.Supp. 921, 924 (E.D.Pa.1985). Miller contends, in the alternative, that if the front pay award is not doubled, prejudgment interest should be granted. However, this court has held that prejudgment interest is not an appropriate remedy where the plaintiff has been awarded liquidated damages, since both remedies seek to

---

**8.** If the employee received *less* in the way of pension benefits due to his discharge, through, for example, an "early retirement penalty," it is

arguable that his front pay award should be *increased* to compensate him for the lost pension benefits.

compensate a wrongfully discharged plaintiff for those nonpecuniary losses which cannot be calculated accurately. *EEOC v. O'Grady,* 857 F.2d at 391 n. 13; *Coston v. Plitt Theatres,* 831 F.2d at 1335–37; *Kossman v. Calumet County,* 800 F.2d 697, 702–03 (7th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987).

As a final matter, Miller asks this court to set the dates from which post-judgment interest should run on the awards both of back and of front pay. Miller moved the district court under Fed.R.Civ.P. 60(a) and (b) to enter an order specifying these dates after the present appeal had been taken. The district court refused relief, finding that leave of the court of appeals was required in order to amend a judgment after the docketing of an appeal. Mem. op. at 2 (E.D.Wis. Mar. 4, 1988). The district court also noted, with respect to Miller's request for post-judgment interest on the *back-pay* award, that it was the court of appeals that ordered the original trial verdict reinstated. Therefore, under Fed.R. App.P. 37, this court should have instructed the district court as to the allowance of interest on the back-pay verdict. *Id.* at 2–3. (Rule 37 codifies the holding of *Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), that a district court is without jurisdiction to award post-judgment interest when the court of appeals reinstates a jury verdict.)

■■■ With respect to Miller's motion under Rule 60(b), the district court appears to have been mistaken as to the options available during the pendency of an appeal.

[W]hen an appeal is pending from a final judgment, parties may file Rule 60(b) motions directly in the district court without seeking prior leave from us. The district court is directed to review such motions expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit, bearing in mind that any delay in ruling could delay the pending appeal. If the district court is inclined to grant the motion, it should issue a brief memorandum so indicating. Armed with this, movant may then request this court to remand the action so that the district court can vacate judgment and proceed with the action accordingly.

*Textile Banking Co., Inc. v. Rentschler,* 657 F.2d 844, 849–50 n. 2 (7th Cir.1981) (quoting *Puerto Rico v. S.S. Zoe Colocotroni,* 601 F.2d 39, 42 (1st Cir.1979), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981)); *see also, Gomez v. Chody,* 867 F.2d 395, 404 (7th Cir.1989). Therefore, it would have been appropriate for the district court to rule on the motion for post-judgment interest, at least on the front pay award. And since this matter appears to be properly within the district court's bailiwick, we remit the issue of post-judgment interest on the *front pay* award to the district court for resolution on remand.

■■■ Post-judgment interest on the *back pay* award should be calculated from October 11, 1984, the date of the initial judgment in Miller's favor. The authority to award post-judgment interest derives from 28 U.S.C. section 1961, which provides that a prevailing party in civil litigation is entitled to interest on a money judgment "from the date of entry of the judgment." "[U]nless the mandate of the appellate court alters the original judgment in more than relatively minor respects, interest should attach from the date of the pre-appeal judgment." *Reaves v. Ole Man River Towing, Inc.,* 761 F.2d 1111, 1113 (5th Cir. 1985). Since our prior opinion reinstated the jury's verdict, this rule should apply to the present case. *Compare Merit Ins. Co. v. Leatherby Ins. Co.,* 728 F.2d 943, 945 (7th Cir.1984) (per curiam) (awarding post-judgment interest from date of initial district court order, which had been vacated by district court under Rule 60(b), but reinstated by court of appeals).

## II.

### *Appeal of Graefenhain*

Gunther Graefenhain, Miller's co-plaintiff, appeals from the district court's decision denying him front pay. Graefenhain argues that the district court erroneously considered certain benefits he received *before* trial in determining that no front pay

damages were necessary to make Graefenhain whole, that the district court erred by employing speculative future wages Graefenhain would receive from his new employer as an offset to his certain loss of pension benefits and that the district court should have considered the willful nature of Pabst's violation of the ADEA in making its front pay determination. Since these contentions are meritless, we affirm the district court's decision denying Graefenhain front pay.

When it first recognized that front pay damages were available under the ADEA, this court stressed that such damages were appropriate only where necessary

> to make the plaintiff whole. A plaintiff is made whole when he or she is returned to the position that such victim would have occupied had the discrimination not occurred.

*McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986) (citations omitted), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *see also Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1332 (7th Cir.1987), *vacated, —— U.S. ——*, 108 S.Ct. 1471, 99 L.Ed.2d 700, *reinstated in relevant part*, 860 F.2d 834, 835 (7th Cir.1988). In order to make plaintiffs whole, a discharged employee should be compensated for pension benefits lost through the wrongful termination.

> Pension benefits ... are an integral part of an employee's compensation package, and indeed are generally referred to as deferred compensation. Because of the paramount importance of pension benefits to an employee's future financial security, it would be unfair to exclude them from a calculation of front pay. An employee illegally discharged near the end of his working career is particularly vulnerable to suffering economic injury in the form of lost pension benefits. If he secures subsequent employment, he will often be unable to work the number of years that are required for vesting under the new employer's pension plan, and thus he will receive no pension benefits for his last few years of employment.

*Blum v. Witco Chemical Corp.*, 829 F.2d 367, 374 (3d Cir.1987) (citation and footnotes omitted); *see also, EEOC v. Prudential Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 161 (7th Cir.1981); *Ventura v. Federal Life Ins. Co.*, 571 F.Supp. 48, 50 (N.D.Ill.1983). However, as the Third Circuit also recognized:

> [Pension] benefits may not be available where an award would make a plaintiff more than whole, such as where a plaintiff has found subsequent employment at a greatly increased salary that would offset any loss of pension benefits, or where defendant can prove that the new employer's pension plan would provide plaintiff with approximately the same benefit he lost due to the defendant's discriminatory firing.

*Blum*, 829 F.2d at 373.

It is against this background that we must evaluate Graefenhain's appeal: while lost pension benefits may be recoverable as part of an ADEA damages award, this relief should not be granted if the aggregate benefits which plaintiff is receiving from his new job more than offset the value of the lost pension benefits. In this case, the district court found that Graefenhain had secured alternative employment after his discharge from Pabst, and that Graefenhain's income at his new employment through age 55, when he had planned to retire, would result in a net *increase* in Graefenhain's income of $48,673, adjusted to present value. Mem. op. at 12 (E.D.Wis. Mar. 11, 1985). Therefore, consistent with the approach which we have outlined, the court determined that Graefenhain was, in the aggregate, better off in his new position than if he had remained with Pabst, and it ordered neither back nor front pay for him.

Graefenhain argues that the district court, in determining that he had suffered no economic injury through his wrongful discharge, improperly considered together the periods before and after trial. However, he suggests no reason why the

district court should have proceeded otherwise. Graefenhain was entitled to be made whole for the losses suffered through his discharge, both for losses suffered before trial and for those to be suffered afterwards. If, before trial, he received benefits, in the form of severance pay or lump-sum pension payments, which more than offset his loss of future earnings, he suffered no economic injury from his discharge. Graefenhain would have this court erect a wall dividing the period before trial (the "back pay period") from the period afterward (the "front pay period"). Then, according to Graefenhain's argument, we should determine, separately, whether the plaintiff has suffered injuries in either separate period and award relief accordingly. This approach makes no sense. A dollar received by Graefenhain before trial is worth as much to him as a dollar received afterwards (adjusted for present value). Therefore, if he received substantial payments before trial which more than offset his projected loss of future earnings, he has not suffered an injury cognizable under the ADEA.

■ Graefenhain also contends that the district court erred by considering an entirely speculative future income stream from his new employment as an offset to Graefenhain's loss of a sum certain in Pabst pension benefits. We disagree. The process of calculating front pay damages involves predictions of the future and to that extent might be described as "speculative". But the district court must make predictions having a rational basis, and its considered judgments about future events will not be upset on appeal unless clearly erroneous. Here, the district court had salary figures from Graefenhain's new employment for 1982, 1983 and 1984. Based on these figures, the district court determined Graefenhain's projected earnings until his preferred retirement age of 55. The district court did not abuse its discretion by

employing this method of calculation, even though these income projections were used to offset the apparently certain loss of Graefenhain's pension benefits from Pabst. On the other hand, we believe it would not have been an abuse of discretion to take the relative probabilities of interruption of income into account had they been in evidence. In the situation before us, however, although the district court's calculations may turn out to be incorrect, they appear to be adequately grounded in the available facts; no more can be expected of a front pay determination.

Finally, Graefenhain suggests that the district court should have considered the willful nature of Pabst's violation of the ADEA in calculating his front pay. This suggestion is without merit. As we discussed in the context of Miller's appeal, the only provision of the ADEA that is intended to serve a punitive, deterrent function is section 626(b). That provision allows the doubling of backpay awards in the case of "willful" violations of the statute. In other respects, the statute appears to provide compensation only; courts may not use the remedial powers granted by the statute to fulfill their own vision of "optimal deterrence."[9] Considering the grave view the law takes of age discrimination, it is perhaps unfortunate that Pabst escapes scot-free in the case of Graefenhain. However, this seems to be the necessary result of the remedial scheme enacted by Congress, which even ties liquidated damage awards to the amount of compensation granted a plaintiff. Where the plaintiff suffered no economic injuries, as appears to be Graefenhain's case, the lucky, if not virtuous, employer need pay no damages.

### III.

For the foregoing reasons, the district court's deduction of pension benefits received from Miller's front pay award is vacated and remanded for further factfind-

9. In a related vein, it is noteworthy that courts have agreed with near unanimity that punitive damages may not be recovered under the ADEA. *See Bruno v. Western Elec. Co.,* 829 F.2d 957, 966–67 (10th Cir.1987) (collecting cases); *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 686–88 (7th Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982). Once again, this demonstrates that the courts are not too quick to engraft additional remedies on a statutory scheme which is predominantly compensatory.

ing in accordance with this opinion. In all other respects, the judgment of the district court is affirmed. Post-judgment interest on Miller's back pay award should be calculated from October 11, 1984. Rule 36 shall not apply on remand.

AFFIRMED IN PART, VACATED IN PART AND REMANDED WITH INSTRUCTIONS.