9 F.3d 113
 145 L.R.R.M. (BNA) 2200
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HENRY COLDER CO., INC., d/b/a Colders Furniture, Respondent.
 No. 92-3405.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 30, 1993.[1]
Decided Oct. 21, 1993.
 
 Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The National Labor Relations Board ("NLRB" or "Board") seeks enforcement of its order requiring respondent to pay its former employee, Steven Wasechek, the loss of earnings Wasechek suffered as a result of respondent's discrimination against him. Wasecheck had been discharged by the respondent as a result of protected concerted complaints about working conditions.
 
 Background
 
 2
 The Board found that in 1987, respondent discriminatorily fired Wasechek from his job as a furniture salesman. The Board ordered respondent to offer Wasechek reinstatement and to make him whole for any losses he suffered. 292 NLRB 941 (1989). This court granted the Board's enforcement application. 907 F.2d 765 (7th Cir.1990). The Board later held a backpay specifications hearing, and determined that respondent owed Wasechek $53,118 plus interest.
 
 
 3
 The evidence showed that during the 18-month period between respondent's termination of Wasechek (November 1987) and its offer to reinstate him (April 1989), Wasechek worked for a company for one week of training in Cincinnati, but left after they refused to assign him to the Milwaukee area as promised; and then worked on commission as a "headhunter," recruiting personnel for an engineering company from May 1988 until April 1989.
 
 
 4
 In the first ten months of 1987, Wasechek earned $49,000 while working for respondent. The ALJ determined that Wasechek would have earned $73,840 in the 18-month backpay period. The ALJ deducted $21,575 as net interim income, resulting in a final figure of $53,118 for backpay. The Board adopted the ALJ's findings and recommendation. 307 NLRB 220 (1992).
 
 Discussion
 
 5
 We review the Board's petition for enforcement under 29 U.S.C. Sec. 160(e). "We must uphold the Board's determination if its factual findings are supported by substantial evidence in the record as a whole and its legal conclusions have a reasonable basis in the law." NLRB v. Augusta Bakery Corp., 957 F.2d 1467, 1471 (7th Cir.1992). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support" the Board's determination. Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951); Roadmaster Corp. v. NLRB, 874 F.2d 448, 452 (7th Cir.1989). We will not disturb findings of fact simply because this court might have come to a different conclusion if it were reviewing the case de novo. NLRB v. P*I*E Nationwide, Inc., 923 F.2d 506, 513 (7th Cir.1991). Resolving conflicting testimony and making credibility determinations is uniquely within the province of the Board, and such determinations will not be overturned absent extraordinary circumstances. Augusta Bakery Corp., 957 F.2d at 1477.
 
 
 6
 Respondent contends that Wasechek's "refusal to apply for available work in the retail home furnishings industry constitutes, as a matter of law, a failure to mitigate damages." Respondent complains that, because Wasechek was so successful in the furniture sales business (he sold about $800,000 worth of furniture each of the two years he worked for respondent), he could only mitigate his damages successfully by looking for work in furniture sales. Respondents points to 150 advertisements for retail furniture sales positions published in the Milwaukee newspaper during the 18-month period.
 
 
 7
 The burden of proof is on the employer to show that the employee failed to make a reasonable search for work in order to mitigate loss of income and the amount of backpay. Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1203 n. 3 (7th Cir.1989); Sprogis v. United Airlines, Inc., 517 F.2d 387 (7th Cir.1975).
 
 
 8
 The Board found that during the 18-month period for which respondent owes backpay, Wasechek applied to three home furniture stores in the Milwaukee area. (Two furniture stores and a wholesale mattress company.) In total, Wasechek applied for approximately 34 jobs during the 18-month period in question. Most of the jobs were sales jobs of some type. The Board was entitled to find that it was "consistent with a good-faith search" for Wasechek to search for work in the general field of sales, as it "was comparable with his past work history and work that also was consistent with the broad area of skills required in salesmanship."[2]
 
 
 9
 Respondent also complains that Wasechek should have applied for work with its two competitors in Milwaukee. Respondent states Wasechek "had nothing to lose." The ALJ believed Wasechek's testimony that he did not apply for jobs with respondent's two competitors because he had previously applied there (while on layoff) and had not been hired; and that he was concerned that if the two stores found out he had been fired it would be held against him. Representatives of the two furniture stores testified that the termination by respondent might have affected their decision on whether to hire Wasechek. While Wasechek speculated the two stores would not have hired him, and respondent speculated that the two stores would have hired him, the Board properly found that this conflict of speculations should be decided against the interest of the wrongdoer. See Kawasaki Motors Corp. v. NLRB, 850 F.2d 524, 527 (9th Cir.1988); Florida Tile Co., 310 NLRB No. 96 (1993), 1993 NLRB Lexis 228 (in determining backpay and mitigation, resolve doubts against wrongdoer). Also, respondent delayed complying with the Board order demanding that respondent remove any references to the discharge from Wasechek's personnel file and that respondent assure Wasechek that it would not use the discharge against him.
 
 
 10
 Respondent also points to Wasechek's position as a "headhunter" for the engineering company, complaining that respondent was being forced to "subsidize his new career as a headhunter." The Board was entitled to find that recruitment required salesmanship skills, and that it was not unreasonable for Wasechek to accept such a position. In addition, an employee need only make an honest good faith effort, and need not seek to mitigate loss of income by using the highest standard of diligence. NLRB v. Int'l. Brotherhood of Electrical Workers, 992 F.2d 990 (9th Cir.1993); Pope Concrete Products, Inc., slip op., No. 26-CA-13404 (NLRB July 8, 1993), 1993 NLRB Lexis 711. In determining whether this good faith effort was made, the Board should not apply "a purely mechanical examination of the number or kind of applications for work which have been made"; instead, it should evaluate the "sincerity and reasonableness of the efforts." Babad, 307 NLRB No. 2 (1992), 1992 NLRB Lexis 426; Fabi Fashions, Inc., 291 NLRB No. 97 (1988), 1988 NLRB Lexis 627. Here, the ALJ heard the testimony and found Wasechek to be sincere and reasonable in his efforts to find employment.
 
 
 11
 We conclude that the Board's factual findings are supported by substantial evidence in the record as a whole and its legal conclusions have a reasonable basis in the law. Accordingly, the Board's application for enforcement is GRANTED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [2]
 Wasechek spent only two years working in furniture sales. Prior to that, he had worked six months as an unemployment office interviewer; nine months as an assistant coach; ten months as a salesman for Plough Company; one year as a youth center director; five years as a security officer; and two years as a catering business's sales coordinator