969 F.2d 451
 15 Employee Benefits Cas. 2064
 CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND,
a pension trust, Marion M. Winstead, Robert C.
Sansone, et al., Plaintiffs-Appellees,
v.
Robert KODER, a sole proprietorship, Defendant-Appellant.
 No. 91-2441.
 United States Court of Appeals,
Seventh Circuit.
 Submitted June 16, 1992.
Decided July 28, 1992.
 
 Terence G. Craig, Francis J. Carey, Melissa Reardon Henry, Margaret M. Fahrenbach, Bruce L. Perlin, Central States, Southeast & Southwest Area Pension Fund, Law Dept., Rosemont, Ill., for plaintiffs-appellees.
 Charles W. Siegel, Markham, Ill., Martin J. Holmes, Scott A. Winckowski, Brown, Baker, Schlageter & Craig, Toledo, Ohio, for defendant-appellant.
 Before BAUER, Chief Judge, CUDAHY and COFFEY, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 In its original form, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., did not impose withdrawal liability on contributors to a multiemployer pension plan unless the plan terminated within five years of the employer's withdrawal, and any liability was limited to 30-percent of the employer's net worth. This situation gave employers an incentive to cease participation in financially weak plans to avoid liability if the plan terminated in the future. Liability would then shift to the remaining employers participating in the particular plan, and eventually to the Pension Benefit Guaranty Corporation as the plan's insurer. With the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381-1453, Congress amended ERISA to eliminate the incentive for early withdrawals by imposing mandatory liability on all withdrawing employers. A withdrawing employer must now pay a share of the unfunded vested liability of the plan. 29 U.S.C. § 1381. ERISA also contains a provision akin to the corporate law technique of "piercing the corporate veil." Under 29 U.S.C. § 1301(b)(1), all members of a "common control" group of "trades or businesses" are jointly and severally liable for the withdrawal liability incurred by any one member of the controlled group. Board of Trustees v. Lafrenz, 837 F.2d 892, 893 (9th Cir.1988). Central States, Southeast and Southwest Areas Pension Fund (Central States) is a multiemployer pension plan. Central States and its trustees sued to enforce withdrawal liability under the MPPAA against Robert Koder as a member of a controlled group. After a bench trial, the court entered judgment in favor of Central States. Koder appeals, and we affirm.
 
 I. Background
 
 2
 In April of 1984, Koder was the 100% shareholder in Babcock Dairy Company (Babcock), an Ohio corporation. Under a collective bargaining agreement between Babcock and local Teamster unions, Babcock was required to make specific contributions to Central States when Babcock's employees worked under the agreement. In April 1984, Central States determined that Babcock permanently ceased its obligation to contribute to the pension fund, thus effecting a "complete withdrawal" from the fund under 29 U.S.C. § 1383. Central States determined that Babcock owed $1,269,367.65 to the fund as withdrawal liability. On April 17, 1984, a Chapter 7 involuntary bankruptcy petition was filed against Babcock. On May 9, 1984, Central States filed a proof of claim for withdrawal liability in the bankruptcy proceedings. The claim notified Babcock and Koder of the amount due and was issued in accordance with ERISA guidelines. 29 U.S.C. §§ 1382, 1399(b)(1). Babcock did not make any payments in response to the notice.
 
 
 3
 Koder owned and leased a commercial building to Babcock in 1984. He collected $36,000 in rent. On his 1984 income tax forms, Koder deducted $26,622.92 in interest charges on a purchase loan for the building, $12,104.64 in depreciation charges, and reported a total loss of $2,727.63 on ownership of the building. In 1984, Koder also provided consulting services to Babcock and other customers. On his 1984 income tax forms, he claimed a net profit of $101,043.91 from these services. Central States determined that Babcock and Koder should be considered as a single employer for the purposes of withdrawal liability under 29 U.S.C. § 1301(b)(1). Because of the complete withdrawal, Central States concluded that Babcock and Koder were jointly and severally liable for the full amount of the withdrawal liability. On May 31, 1989, Central States sent a past due notice and demand for payment directly to Koder. The past due notice informed Koder that the assessment had been revised to $1,148,027.33. No payments have been made, and the district court found that neither Babcock nor Koder had requested arbitration.
 
 
 4
 After a bench trial, the district court ruled that Babcock and Koder should be treated as a single employer for purposes of collecting withdrawal liability. The district court held that Koder and Babcock fit within the definition of a "single employer" as described by 29 U.S.C. § 1301(b)(1): "employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." Since Koder failed to initiate arbitration within the statutory time period, see 29 U.S.C. § 1401(a), and payments to Central States were in default, see 29 U.S.C. § 1399(c)(5), the district court held that Koder was currently liable for the entire withdrawal liability debt plus interest, fees, costs and liquidated damages.
 
 
 5
 Koder challenges the district court's decision on three grounds. He contends that neither the leasing arrangement with Babcock nor his consulting activities amount to a "trade or business" under section 1301(b)(1). In addition, even assuming he was so engaged, he asserts that he does not fall within a "common control" group under section 1301(b)(1). Finally, he argues that his attempts to initiate arbitration under the collective bargaining agreement precluded the plaintiffs from instituting suit in federal court.
 
 II. Analysis
 A. Trade or Business
 
 6
 The facts in the present case are strikingly similar to those in Central States, Southeast & Southwest Areas Pension Fund v. Slotky, 956 F.2d 1369 (7th Cir.1992). In Slotky, after Stevens Bedding Warehouse, a corporation participating in an ERISA pension plan, went bankrupt, the pension fund sought to collect withdrawal liability from Slotky. Slotky was the sole shareholder in Stevens Bedding, and the buildings used by the corporation had been leased to it by Slotky. The fact that Slotky was both the sole shareholder in Stevens Bedding and the sole proprietor of a real estate leasing business was sufficient to support the finding that he was involved in "trades or businesses" under section 1301(b)(1). Id. at 1374.
 
 
 7
 Koder emphasizes that he did not make any profit from the leasing transaction. Furthermore, in purchasing the building and leasing it to Babcock, he was not motivated by any desire for monetary gain, but was acting as a sort of good samaritan for Babcock. Whether or not Koder made money on the leasing transaction is irrelevant. The statutory language makes no exemption from withdrawal liability for trades or businesses operating at a loss, nor does Koder point to any cases creating one. See Central States, Southeast & Southwest Areas Pension Fund v. Long, 687 F.Supp. 298 (E.D.Mich.1987) ("Defendant Long's argument that the carrying on of a trade or business is dependent upon his subjective intent to do so is simply unpersuasive.").
 
 
 8
 Koder's reliance on Doggett v. Burnet, 65 F.2d 191 (D.C.Cir.1933), is misplaced. The Doggett court held that under section 214(a)(1) of the Revenue Act of 1926, the taxpayer could deduct costs for advertising and printing books as legitimate business expenses, even though the publishing enterprise failed to realize a profit and had little hope of earning a profit in the future. The court stated that in deciding whether the business came within the exemptions of the taxing statute:
 
 
 9
 The proper test is not the reasonableness of the taxpayer's belief that a profit will be realized, but whether it is entered into and carried on in good faith and for the purpose of making a profit, or in the belief that a profit can be realized thereon, and that it is not conducted merely for pleasure, exhibition, or social diversion.
 
 
 10
 Id. at 194. Koder does not argue he leased his property to Babcock merely out of a desire for "pleasure, exhibition, or social diversion." Moreover, any economic benefit to Babcock from the "benevolent" leasing arrangement would eventually translate into a benefit to Koder as the 100% shareholder.
 
 
 11
 With respect to his consulting services, in his brief Koder maintains that he was not involved in consulting activities until after Babcock filed for bankruptcy in April 1984. This assertion is belied by Koder's own deposition testimony:
 
 
 12
 Q. Did you provide the services pursuant to this consulting agreement?
 
 
 13
 A. Yes, I did.
 
 
 14
 Q. And did you begin providing those services on or about December 15th, 1983?
 
 
 15
 A. As I recall, yes.
 
 
 16
 Q. And did this consulting agreement ever terminate?
 
 
 17
 A. Uh-huh.
 
 
 18
 Q. And when did it terminate?
 
 
 19
 A. I can't remember that.
 
 
 20
 Q. Well, can you remember if you provided consulting services pursuant to this agreement in 1984?
 
 
 21
 A. I think I did.
 
 
 22
 Q. In 1985?
 
 
 23
 A. I don't remember.
 
 
 24
 Q. But you believe you did through 1984?
 
 
 25
 A. Uh-huh.
 
 
 26
 (R. 28, Ex. 5 at 14-15). We will not permit Koder to now contradict his prior sworn testimony. See Essick v. Yellow Freight Systems, Inc., 965 F.2d 334 (7th Cir.1992). The district court's finding that Koder's leasing operation and consulting services constitute "trades or businesses" under section 1301(b)(1) was not clearly erroneous.
 
 B. Common Control
 
 27
 Regulations have interpreted "trades or businesses under common control" to include "brother-sister" groups which are defined as:
 
 
 28
 two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own ... a controlling interest of each organization, and (ii) ... such persons are in effective control of each organization.
 
 
 29
 26 C.F.R. § 1.414(c)-2(c)(1). It is undisputed that as owner of 100% of the stock in Babcock, Koder owned a controlling interest and had effective control of Babcock. See 26 C.F.R. §§ 1.414(c)-2(b)(2)(A) and 1.414(c)-2(c)(2)(i). Koder contends he does not fall within the definition of "common control" because the real estate leasing and consulting services were all part of his duties as President of Babcock. The record does not support this contention. It is hard to imagine that one of his "duties" as President of Babcock was to purchase a building with his own funds and then lease it to the corporation. Babcock did not lease the property rent-free, it paid $36,000 in 1984 directly to Koder. These payments did not represent compensation to Koder for performance of his "duties," they were rent payments. As part of his consulting services, Koder signed a contract with Peninsular Products Company. The agreement does not indicate that Koder signed on behalf of Babcock, nor has Koder alleged as much. Fees for consulting were paid to Koder, not to Babcock. There is ample support in the record for the conclusion that the leasing and consulting services are sole proprietorships in which Koder held the controlling interests and had effective control. See 26 C.F.R. §§ 1.414(c)-2(b)(2)(D) and 1.414(c)-2(c)(2)(iv). The district court's findings on the issue of common control are not clearly erroneous.
 
 C. Arbitration
 
 30
 In the district court, Koder stipulated to the fact that neither he nor Babcock had made any request for arbitration. For the first time on appeal, he alleges that two phone calls he made in July 1989 to Bruce Perlin, an attorney for Central States, constituted requests for arbitration. Koder's stipulation in the district court waives this issue on appeal. See Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1206 (7th Cir.1989).
 
 III. Conclusion
 
 31
 The evidence in the record clearly supports the district court's findings that Babcock and Koder's leasing and consulting activities constitute "trades or businesses under common control." Koder's belated attempt to claim that he sought arbitration amounts to a waiver of this argument. The judgment of the district court is
 
 
 32
 AFFIRMED.