In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2273

TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS
PENSION FUND,

*Plaintiff-Appellee,*

*v.*

THE E COMPANY, a dissolved Illinois Corporation, *et al.*,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-10323 — **Thomas M. Durkin**, *Judge.*

ARGUED JANUARY 18, 2019 — DECIDED JANUARY 29, 2019

Before EASTERBROOK, BARRETT, and SCUDDER, *Circuit
Judges.*

SCUDDER, *Circuit Judge.* Under the terms of a collective
bargaining agreement, T&W Edmier Corporation regularly
contributed on behalf of its employees to the Suburban
Teamsters of Northern Illinois Pension Fund. But in 2014
T&W ceased operations and cut off its pension contributions,
prompting the Pension Fund to assess withdrawal liability of

$640,900. The Pension Fund sought to collect payment by mailing a notice of the withdrawal liability to T&W and several affiliated entities, only to see their collection efforts ignored. The Trustees of the Pension Fund eventually sued to collect payment, and that action culminated in the district court ordering T&W, along with several other individuals and entities under common control, to pay the withdrawal liability. Now seeking to vacate the district court's judgment, T&W and the other defendants argue that their due process rights were violated when the Pension Fund initiated collection of the withdrawal liability by mailing notice to some but not all of them. Seeing no error, we affirm.

# I

T&W Edmier Corporation operated a construction business in tandem with The E Company. T&W owned the construction equipment while The E Company hired and provided employees. Brothers Thomas and William Edmier each owned 50% of T&W. Kevin Edmier, William's son, owned and operated The E Company. Pursuant to the terms of a collective bargaining agreement with its employees, T&W participated in the Suburban Teamsters of Northern Illinois multi-employer pension plan, and, for its part, The E Company agreed to assume joint and several liability for T&W's obligations to the Pension Fund. In 2014, however, T&W and The E Company ceased operations, dissolved, and withdrew from the plan.

The Multiemployer Pension Plan Amendments to the Employee Retirement Income Security Act require a covered plan to assess withdrawal liability against a withdrawing employer. See 29 U.S.C. § 1396. Withdrawal liability, as its name implies, is designed to prevent shifting the financial burden

of employees' vested pension benefits to other employers in the multi-employer plan. We explained these principles at some length in *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371–72 (7th Cir. 1992).

Consistent with ERISA's mandate, the Pension Fund mailed a notice of withdrawal liability on April 30, 2015, a past due notice on August 17, 2015, and a default and acceleration notice on November 12, 2015. The notice went to T&W, The E Company, and the Edmier Corporation (another entity wholly owned by Thomas Edmier). Even more specifically, the Pension Fund sent the notice to the attention of Thomas, William, and Kevin Edmier, as well as attorney George Grumley, the registered agent of both T&W and The E Company. At their depositions, Thomas, William, and Kevin Edmier acknowledged receiving the notice.

The Pension Fund's notices went unanswered and, as a result, the Pension Fund's Trustees initiated a lawsuit in the district court. Ignoring the Pension Fund's requests for payment had significant legal consequences for the defendants. Congress has required that all disputes over withdrawal liability be resolved through arbitration, see 29 U.S.C. § 1401(a)(1), and an employer's failure to arbitrate means "the plan can then immediately file suit to collect the entire amount of withdrawal liability, and in that proceeding the employer will have forfeited any defenses it could have presented to the arbitrator," *Nat'l Shopmen Pension Fund v. DISA Industries, Inc.*, 653 F.3d 573, 579 (7th Cir. 2011).

Our case law has recognized a narrow exception to this general rule of forfeiture for a party who "had absolutely no reason to believe that they might be deemed members of a controlled group" but is nonetheless sued and alleged to be

liable for another party's withdrawal liability based on ERISA's "controlled group" provision. See *Slotky*, 956 F.2d at 1373. The controlled group provision imputes liability to all "trades or businesses" under "common control" with another party who is liable for the withdrawal liability. See 29 U.S.C. § 1301(b)(1). And our decision in *Slotky* allows unsuspecting defendants who are sued in district court but had no idea they might be liable as members of a controlled group to litigate that question—membership in a controlled group. See 956 F.2d at 1373.

Relying on this framework, the district court concluded that T&W, The E Company, and the Edmier Corporation had forfeited all defenses to liability, including the defense that they were not members of a controlled group, by failing to arbitrate after receiving the Pension Fund's notice of withdrawal liability. This outcome reflected a straightforward application of these defendants not complying with the clear arbitration mandate in 29 U.S.C. § 1301(b)(1).

As for each of the other defendants (Thomas, William, and Kevin Edmier; K. Edmier & Sons LLC; The William Edmier Trust; Lake Street Realty, Inc.; and E&E Equipment & Leasing), the district court explained that they too had likely forfeited all defenses as they were not the type of unsuspecting defendant contemplated in *Slotky*. Put differently, the district court reasoned that none of these defendants had such a credible claim of surprise (at being a member of a controlled group) to sidestep ERISA's arbitration requirement. Regardless, the district court went further and determined as a factual matter that each of these defendants was a trade or business under common control with another party who received the notice of withdrawal liability. This reasoning finds strong

support in the record and resulted in the district court concluding that each of these defendants was liable under ERISA's controlled group provision.

In the end, the district court entered summary judgment for the Pension Fund's Trustees and ordered the defendants to pay the full $640,900 of withdrawal liability, plus interest, liquidated damages, attorneys' fees, and costs. As members of a controlled group, each of the defendants became jointly and severally liable for payment. See *Central States, Southeast and Southwest Areas Pension Fund v. Koder*, 969 F.2d 451, 452 (7th Cir. 1992) (citing 29 U.S.C. § 1301(b)(1)).

## II

The defendants challenge the district court's judgment by arguing that the Pension Fund's notice of withdrawal liability violated the Fifth Amendment's Due Process Clause. In their view, the Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) required the Pension Fund to serve the notice of withdrawal liability on each of them and to explain the standard for controlled group liability under ERISA in the notice. This contention misses the mark.

The defendants' reliance on *Mullane* is misplaced because all parties agree that judicial proceedings commenced in the district court with proper service of process (notice of the complaint) to each defendant. The due process standard announced in *Mullane*—a decision requiring sufficient notice of a pending judicial proceeding—was therefore satisfied. No reading of *Mullane*, however, supports the view that ERISA's controlled group liability provisions and accompanying

procedural framework (in which a defendant forfeits certain defenses by failing to arbitrate) violate due process.

A related observation is in order. The defendants colloquially and imprecisely allege a violation of due process, time and again citing *Mullane*. In no way, shape, or form did any due process violation occur here. The defendants who received—but chose to ignore—the notice of withdrawal liability had every opportunity to arbitrate and yet failed to do so, resulting, by operation of ERISA, in a waiver of all defenses to withdrawal liability. No unfairness inheres in that outcome. And, as for the defendants who did not receive the notice of withdrawal liability but nonetheless found themselves named in a federal lawsuit, the district court provided them a full and fair opportunity to litigate their liability as members of a controlled group. Nothing about the path those defendants traveled offends due process.

For these reasons, we AFFIRM.