**Nunzio M. GIANDONATO, Plaintiff-Appellee,**

**v.**

**SYBRON CORPORATION, d/b/a Taylor Instrument Company, Defendant-Appellant.**

**No. 85–2629.**

United States Court of Appeals, Tenth Circuit.

Oct. 29, 1986.

Ronald E. Gregson, Denver, Colo., for plaintiff-appellee.

Jeffrey T. Johnson of Holland & Hart, Denver, Colo., for defendant-appellant.

Before BARRETT and TACHA, Circuit Judges, and BROWN,* District Judge.

BARRETT, Circuit Judge.

Sybron Corporation (Sybron), formerly Taylor Instrument Company (Taylor), appeals from a jury verdict and judgment entered in favor of Nunzio M. Giandonato, a/k/a John Donato (Donato). Donato brought this action pursuant to the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, alleging that he had been constructively discharged in violation of the Act.

Donato was employed by Taylor for over fourteen years between 1969 to 1983 as a salesman of process control instrumentation units. Donato worked out of Taylor's Denver office which covered Montana, Wyoming, Utah, Colorado, New Mexico and parts of Nebraska and Oklahoma. During

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

his employment with Taylor, Donato exceeded his sales quotas by over $900,000.00 and in 1982, he received Taylor's Hall of Fame award.

During the fall of 1982, Donato reported to John Carlson (Carlson), Taylor's Western Regional Manager. 1982 was a slow year for the process controls industry and its problems continued into 1983. During this period, Carlson transferred one of Taylor's Denver based salesmen to California, fired June Johnson, Taylor's Denver office manager and inside salesperson, and was critical of Donato who had been unable to meet the sales quota set by Carlson. On Friday, May 13, 1983, Carlson and Donato met in Denver to review Donato's job performance. At that time Carlson gave Donato the choice of a three month probation or early retirement with severance pay and extended benefits. Carlson gave Donato until May 18, 1983, to reach a decision.

On May 16, 1983, Donato resigned from his job at Taylor and commenced receiving twenty weeks of severance pay at his normal weekly salary. At the end of twenty weeks, Donato began receiving Taylor's regular pension benefits. Donato also received extended medical insurance coverage for a period of eighteen months. The extended medical coverage was an exception to Sybron's normal policy and was granted to Donato in consideration for his fifteen years of service and because the company was aware that Donato's wife was terminally ill with cancer.

On May 16, 1983, Donato also filed an age discrimination complaint with the Equal Employment Opportunity Commission (EEOC) contending that he had been harassed and constructively discharged by Taylor on account of his age. During June and July, 1983, Taylor, while denying that any age discrimination had occurred, made several verbal and written reinstatement offers to Donato through the EEOC. These offers would have reinstated Donato to his former position on comparable terms. Donato rejected each reinstatement offer.

Donato's wife died on September 24, 1983. On December 15, 1983, the EEOC notified Donato that it had determined not to proceed further with his charge against Taylor. On May 4, 1984, Donato filed the amended verified complaint herein which alleged that Taylor had constructively discharged him in violation of the ADEA. Donato sought compensatory damages, liquidated damages under the ADEA, punitive damages, interest, attorney's fees, injunctive relief, and reinstatement. In its answer, Sybron alleged that: Donato's complaint failed to state a claim upon which relief could be granted; Donato's complaint failed to state a claim for punitive damages; Donato had failed to mitigate his damages; and because Donato had refused Sybron's unconditional offers of reinstatement, its liability for back pay, if any, was limited to the period between Donato's resignation and Sybron's offers of reinstatement.

On November 6, 1984, Sybron moved for partial summary judgment, seeking an order dismissing Donato's claims for back pay and reinstatement. In its brief in support of the motion, Sybron alleged that Donato, by rejecting its unconditional offers of reinstatement, had forfeited his rights to back pay and reinstatement. Sybron attached to its motion: a copy of a letter dated June 20, 1983, from Sybron to Lew Vigil, an EEOC investigator, in which Sybron stated that Donato "may return to active employment with no loss of service credit" on a probationary basis and that if Donato "wishes to return to active employment I will need his decision no later than July 1, 1983"; a copy of a letter of July 21, 1983, from Sybron to Vigil in which Sybron confirmed an oral offer of re-employment made on July 19, 1983, proposing to fully reinstate Donato without loss of service and without any probationary period; and a copy of a letter dated July 29, 1983, from Sybron to Vigil in which Sybron reiterated its earlier offer of July 21, 1983, and stated that Donato would not have to repay any of the severance pay he had received.

In his brief in opposition to Sybron's motion for summary judgment, Donato argued that he had acted reasonably in re-

jecting Sybron's offers of reinstatement because "uncertainties" in the offers left his future status and working conditions in substantial doubt. Donato argued that the offers lacked specificity and did not set forth sales quotas, goals, or territory.

On January 16, 1985, the district court entered an order denying Sybron's motion for partial summary judgment. The court's order provided:

> Upon consideration of the defendant's motion for partial summary judgment, filed November 6, 1984, together with the briefs supporting and opposing that motion, and upon the conclusion that the question of the effect of the offers of reinstatement is a matter which can only be determined in the context of the trial, and is not subject to determination on a motion for partial summary judgment, it is
>
> ORDERED, that the motion for partial summary judgment is denied.

(R., Vol. I at Item 7.)

At trial, Donato presented evidence in support of his theory that he was harassed and constructively discharged by Sybron because of his age. Donato, who was 57 years old when he resigned, testified, *inter-alia:* Carlson was critical of his performance as a salesman; Carlson's criticisms were based on Donato's age; in November, 1982, Carlson told him that he would be replaced by a younger and more aggressive person; in early 1983 Carlson told him that he was too old to change; and that, at their May 13, 1983, meeting, Carlson told him that he would make Donato's three month probationary period miserable and would find a reason to fire him.

Sybron defended on the basis that: Donato had voluntarily resigned; even though there had been no age discrimination surrounding Donato's resignation, Sybron thereafter made three reinstatement offers to Donato upon terms equal to or better than the terms he enjoyed prior to his resignation; Donato had rejected its reinstatement offers; and, Donato had failed to mitigate any damages which surrounded his resignation.

Donato, while acknowledging that he had rejected the reinstatement offers, asserted three reasons for rejecting the offers. He stated that he did not want to work under Carlson's supervision, he had uncertainties about Sybron's offers, and his wife was terminally ill with cancer. In response, Sybron presented evidence that it had agreed to have Donato work under a supervisor other than Carlson, and that Donato had acknowledged that although he had uncertainties about Sybron's reinstatement offers, at no time did he ask Sybron to address his uncertainties. At the close of all the evidence, Sybron moved for a directed verdict based on its affirmative defense of Donato's rejection of the reinstatement offers. The motion was denied.

The jury returned a verdict in which it found that: Sybron had discriminated against Donato because of his age; Sybron's violation of the ADEA was willful; and, Sybron did not prove its affirmative defenses of reinstatement offers or failure to mitigate. The district court entered judgment in favor of Donato in the amount of $327,357.00 representing: $83,951.00 in net back pay and benefits; $83,951.00 in liquidated damages for willful violation of the ADEA; $137,599.00 in front pay in lieu of reinstatement; and $21,856.00 in stipulated attorney's fees and costs.

On appeal Sybron contends, without challenging the jury's finding of age discrimination or the computation of damages, that: (1) the court erred in denying its motion for partial summary judgment; (2) the court erred in denying its motion for directed verdict at the close of all the evidence; (3) the jury's verdict on Sybron's reinstatement offer defense was not supported by substantial evidence; (4) the court erroneously instructed the jury on Donato's failure to mitigate; and (5) the jury's verdict on Donato's failure to mitigate is not supported by substantial evidence.

Because of their dispositive nature, our discussion will be limited to Sybron's first and second allegations of error. Sybron contends that the court erred in denying its

motion for partial summary judgment and its motion for a directed verdict, both of which were predicated upon Donato's rejection of its offers of reinstatement. Sybron relies on *Ford Motor Company v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), for the proposition that an employer can toll the further accrual of back pay liability by making an unconditional offer of reinstatement to the claimant.

In reviewing a motion for summary judgment, we must view the case in the same manner as did the district court. *R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469 (10th Cir. 1986). Thus, we must view the record in light most favorable to the party opposing the motion and determine whether any genuine issue of material fact exists and, if not, whether substantive law was correctly applied. *Frank v. Nimmo,* 796 F.2d 1230 (10th Cir.1986); *Baker v. Penn Mutual Life Insurance Company,* 788 F.2d 650 (10th Cir.1986).

Similarly, in assessing whether a verdict should have been directed, our standard is the same as the district court's, i.e., whether the evidence is sufficient to create an issue for the jury. *Motive Parts Warehouse v. Facet Enterprises,* 774 F.2d 380 (10th Cir.1985). A directed verdict is proper only when a party has presented such evidence that, without weighing the credibility of the witnesses, the only reasonable conclusion is in his favor. *Hurd v. American Hoist and Derrick Company,* 734 F.2d 495 (10th Cir.1984). Applying these standards to the facts herein, we agree with Sybron's contention that the court erred in denying its motion for partial summary judgment and that this error was compounded when the court refused to grant its motion for directed verdict.

As set forth above, Sybron contends that the court erred in denying its motion for partial summary judgment and a directed verdict because Donato repeatedly rejected its offers of reinstatement. Sybron argues that under *Ford Motor Company v. EEOC, supra, (Ford Motor Co.),* its liability for backpay and damages in lieu of

reinstatement was tolled by its unconditional offers of reinstatement. We agree.

In *Ford Motor Co.,* a Title VII case, the Court was asked to determine "whether an employer charged with discrimination in hiring can toll the continuing accrual of backpay liability—simply by unconditionally offering the claimant the job previously denied, or whether the employer also must offer seniority retroactive to the date of the alleged discrimination." 458 U.S. at p. 220, 102 S.Ct. at p. 3060. After observing that the primary goal of Title VII is to end discrimination, and that "the victims of job discrimination want jobs, not lawsuits", *Id.* at p. 230, 102 S.Ct. at p. 3065, the Court held:

> An unemployed or underemployed claimant, like all other Title VII claimants, *is subject to the statutory duty to minimize damages* set out in § 706(g). This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, *he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied.* Consequently, an employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages. (footnotes omitted) (emphasis supplied.)

458 U.S. at pp. 231–32, 102 S.Ct. at pp. 3065–66.

The Court further observed that "[i]f the claimant fulfills the requirement that he minimize damages by accepting the defendant's unconditional offer, he remains entitled to full compensation if he wins the case." 458 U.S. at p. 233, 102 S.Ct. at p. 3066. The Court concluded that:

> [W]hen a claimant rejects the offer of the job he originally sought, as supplemented by a right to full court-ordered compensation, his choice can be taken as

establishing that he considers the ongoing injury he has suffered at the hands of the defendant to have been ended by the availability of better opportunities elsewhere. For this reason, we find that, absent special circumstances, the simple rule that the ongoing accrual of backpay liability is tolled when a Title VII claimant rejects the job he originally sought comports with Title VII's policy of making discrimination victims whole.

458 U.S. at pp. 238–39, 102 S.Ct. at p. 3069.

Under *Ford Motor Co.*, a claimant, absent "special circumstances," forfeits his right to backpay "if he refuses a job substantially equivalent to the one he was denied." *See, Fiedler v. Indianhead Touch Line, Inc.*, 670 F.2d 806, 808–09 (8th Cir.1982) (an employee's refusal of employer's good faith offer of reinstatement terminates accrual of damages); *Cowan v. Standard Brands, Inc.*, 572 F.Supp. 1576 (N.D. Al, S.D.1983) (an employer can cut off all claims of a terminated employee for back pay by unconditionally offering the employee a job comparable to the job from which he was terminated, citing *Ford Motor Co.*). *See also, Dickerson v. DeLuxe Check Printers, Inc.*, 703 F.2d 276 (8th Cir.1983) (an employer does not toll the accrual of back pay where the employer does not conclusively establish that it offered its employer a job substantially equivalent to the job the employee was seeking.)

Courts have recognized that the circumstances surrounding an employee's refusal to accept reinstatement may affect the employee's right to additional relief. In *Taylor v. Teletype Corporation*, 648 F.2d 1129, 1139 (8th Cir.1981), *cert. denied* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981), the court held:

The failure to accept an offer of reinstatement does not automatically terminate an employee's right to relief.

In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal. [*Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 153 (5th Cir.1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979).]

Under *Taylor*, an employee's refusal to accept reinstatement does not automatically preclude relief if he or she has valid reasons for refusal. In the instant case, Donato set forth three reasons for refusing Sybron's reinstatement offers, i.e., that his wife was ill, that he did not want to return to work under Carlson's supervision, and that the offers had too many "uncertainties". Donato's refusal to return to work because his wife was ill and because he did not want to work under Carlson are not valid reasons for refusing Taylor's offers of reinstatement.

Under *Ford Motor Co.*, an employee is obligated to minimize his damages by accepting his employer's offer of reinstatement to his previous job or a job that is "substantially equivalent" to his previous job. Donato did not comply with *Ford Motor Co.*'s mandate of minimizing his damages by refusing his employer's offer of reinstatement for the personal reasons he asserted (wife's illness and desire not to work under Carlson). *See, Fiedler v. Indianhead Truck Line, Inc., supra* (an employee cannot refuse an offer of reinstatement for the personal reasons that he desired to have the EEOC investigation continue, that he was traumatized by the death of his wife, and that he did not wish to forego his new job); *Cowan v. Standard Brands, Inc., supra* (an employee cannot refuse an offer of reinstatement because his feelings were hurt or because he did not feel the offer was bona fide and thereby void the holding in *Ford Motor Co.*)

The negative effect of Donato's refusal of Sybron's offers of reinstatement because his wife was ill and because he did not want to work under Carlson is further magnified when we consider that, in addition to offering Donato his old job, Sybron also agreed, at Donato's request, to: (1) fully reinstate Donato with no loss of ser-

vice (a condition not considered necessary in *Ford Motor Company*), and no reduction in salary; (2) hire a new district manager so that Donato would not have to report to Carlson; (3) not change future territory, accounts, and sales quotas except by written agreement between Donato and his manager; and (4) stipulate that Donato would not have to repay any of the severance pay he had received.

With respect to Donato's argument that the reinstatement offers contained too many "uncertainties", we observe that the record fails to disclose that Donato ever requested that the reinstatement offers be clarified. We deem Donato's failure to inquire into the "uncertainties" of the reinstatement offers to be of the utmost importance when we consider that: Donato had been employed with Taylor for approximately fifteen years and had held various sales positions; Donato resigned on May 16, 1983; Donato filed his age discrimination complaint with the EEOC on May 16, 1983; Donato sent a memorandum to Carlson on May 20, 1983, in which he advised Carlson that he had turned in his company car, office key, beeper, and credit cards and in which he also asked the company to "please initiate any retirement to commence with twenty (20) weeks severance"; on June 13, 1983, Sybron orally related to Vigil (EEOC investigator) that Donato could return to active employment on a probationary status for six months with no loss of service credit; Sybron reiterated its June 13, 1983 offer of reinstatement in a letter to Vigil dated June 20, 1983; Sybron made a verbal offer of re-employment to Donato on July 19, 1983, during a meeting at Vigil's EEOC office which was attended by Donato, Vigil, and James Wicker, then Vice President of Sales and Service for Taylor; Sybron confirmed the July 19, 1983, verbal offer in a letter to Vigil dated July 21, 1983; and Sybron made its final offer of reinstatement to Donato via a letter to Vigil dated July 29, 1983.

The record simply fails to establish that Donato, a fifteen year employee with Taylor, at any time requested that Sybron clarify the reinstatement offers because of any uncertainties. The record further fails to establish that the offers of reinstatement, other than the initial oral offer of June 13, 1983, confirmed by letter of June 23, 1983, were anything other than bona fide unconditional offers of reinstatement. Donato was afforded the opportunity of full reinstatement in his old job as of July 21, 1983.

Under these circumstances, we hold that Donato's refusals of Sybron's offers of reinstatement eliminated any viable claim he may otherwise have had for back pay and reinstatement. Thus, the court erred in denying Sybron's motions for partial summary judgment and directed verdict.

The judgment in favor of Donato in the amount of $327,350 is **REVERSED** and vacated in its entirety. The case is **REMANDED** for such further proceedings as the district court may deem appropriate for the determination of what damages, if any, Donato incurred from his resignation on May 16, 1983, until July 21, 1983, when Sybron submitted its unconditional offer of reinstatement. In reviewing Donato's damages in this regard, the district court should give consideration to the twenty weeks of severance pay, pension benefits, and extended medical coverage benefits received by Donato.