**Connie HERRERA, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS UNION, LOCAL NO. 68, Denver Joint Electrical Apprentice and Training Committee, Dynalectric, Inc. a Colorado Corporation, and Tapp Electric, Inc. a Colorado Corporation, Defendants.**

No. CIV.A.01–WY–2375–CB.

United States District Court, D. Colorado.

Oct. 15, 2002.

Stephen John Jouard, Dwyer, Huddleson & Ray, P.C., Fort Collins, CO, David H. Johnson, Moore, Smith & Williams, P.C., Fort Collins, CO, for Plaintiff.

Thomas B. Buescher, Electrical Workers, Local Union 68, Brauer, Buescher, Goldhammer & Kelman, PC, Denver, CO, Christopher K. Miller, Apprentice and Training Committee, Julie C. Tolleson, Kennedy & Christopher, P.C., Denver, CO, for Denver Joint Electrical Apprentice and Training Committee.

Gerald S. Hartman, Alisa Helene Reff, Swidler, Berlin, Shereff, Washington, DC, Jay S. Horowitz, Horowitz & Wake, Denver, CO, for Dynalectric, Inc.

TAPP ELECTRIC, INC., a, Mark Edwin Adams, Harden, Hass, Haag & Hallberg, PC, Fort Collins, CO, for Tapp Electric, Inc.

### ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This case arises out of the Plaintiff's tribulations while seeking to become a journeyman electrician. The matter is currently before the Court on: (1) Defendant International Brotherhood of Electrical Workers, Local No. 68's, ("IBEW") Motion for Summary Judgment; (2) Defendant Denver Joint Electrical Apprenticeship and Training Committee's ("DJEATC") Motion for Summary Judgment; and (3) DJEATC's Motion for Summary Judgment Regarding Plaintiff's Demand for Back and Front Pay. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### *Statement of Parties and Jurisdiction*

At all relevant times, Plaintiff Connie Herrera was a resident of Colorado. In May or June 1998, Plaintiff was admitted into the DJEATC apprentice program and remained in the program until April of 2000. Plaintiff was a member of the IBEW from February 1, 1999 until January 2, 2001.

Defendant IBEW is a labor organization, as that term is defined under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Colorado Anti-discrimination Act. IBEW conducts business throughout Colorado. Defendant DJEATC is a non-profit Colorado corporation providing labor training for electrical apprentices and workers in Colorado.

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1332 and 42 U.S.C. § 2000e–5(f)(3). Venue is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3).

### *Background*

Plaintiff, Connie Herrera (formerly Connie Poff), alleges that during the course of her electrical apprenticeship with Defendant DJEATC, she was subjected to sexually harassing and discriminatory treatment both in the DJEATC classroom and during on-the-job training while working for Dynalectric, Inc. ("Dynalectric") and Tapp Electric. Plaintiff contends that sev-

eral of the individuals who harassed her were members of Defendant IBEW.

In March 1998, Plaintiff was hired as an unindentured electrical apprentice for Dynalectric. Plaintiff's first job with Dynalectric was at Colorado State University. On April 20, 1998, Plaintiff was transferred to a Dynalectric job at the National Wildlife Research Center in Fort Collins, Colorado, where she worked until December 2, 1998, when she was transferred to a site at the Coors Brewery. Plaintiff continued to work for Dynalectric until November 19, 1999.

In May or June of 1998, the Plaintiff was accepted into an apprentice training program through the Defendant DJEATC and in February 1999 Plaintiff became a member of the Defendant IBEW. Plaintiff claims that while she was employed by Dynalectric at the National Wildlife job she was discriminated against on the basis of sex and subjected to a hostile work environment in the form of degrading and sexually explicit comments (from Chris Sirbin, Scott Butow, and Gary Cravens) and was denied the opportunity for meaningful work. Plaintiff maintains that she complained to her job supervisor and IBEW stewards; however, no disciplinary action was taken.[1]

In September 1998, Plaintiff began her classroom instruction in the four year electrical apprentice program with Defendant DJEATC. During her three curriculum years of classroom instruction in the apprentice program with Defendant DJEATC, Plaintiff claims she was subjected to sexually harassing behavior (sexually explicit gestures and statements) by her fellow classmates. Plaintiff maintains that her instructors at DJEATC witnessed this behavior and that she also informed her instructors and the administrators at

DJEATC of this behavior. Plaintiff also complained to these instructors and administrators about the harassment at Dynalectric. Plaintiff contends that the DJEATC never took any investigative or disciplinary action.

Through DJEATC, Plaintiff was placed on a training assignment with Tapp Electric, where she worked from November 1999 until April 2000. Plaintiff alleges that during her tenure with Tapp Electric she was subjected to sexual harassment and discrimination by male employees at Tapp Electric who were also IBEW members (Aaron Thompson and Tim Moser). In sum, Plaintiff contends that she complained to her supervisors about the inappropriate behavior and comments, but no action was taken in response to her complaints. Plaintiff contends that during her employment with Dynalectric and Tapp Electric, and during the course of her apprenticeship schooling at DJEATC, the sexual harassment was committed by IBEW members. As a result of the ongoing harassment, Plaintiff asserts that she was forced to quit the four year program on April 24, 2002.

Lastly, Plaintiff alleges that Defendant IBEW Union and the Rocky Mountain Chapter of National Electrical Contractors Association entered into a collective bargaining agreement, which established the Defendant DJEATC and all instructors at the DJEATC were IBEW members. Plaintiff seeks relief against Defendant DJEATC and Defendant IBEW for unlawful discrimination under Title VII and for Breach of Equal Opportunity and Sexual Harassment Policies (contract).

### Legal Standard

Summary judgment is proper when there is no genuine issue of material fact

---

**1.** Billy Morris, Scott Bell, and Leo Romero were three IBEW union stewards during

Plaintiff's employment at the National Wildlife job.

to be resolved at trial. Fed.R.Civ.P. 56(c); *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Nelson v. Geringer,* 295 F.3d 1082, 1086 (10th Cir.2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir.1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment. *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party bears burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. *Id.* To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ford v. West,* 222 F.3d 767, 774 (10th Cir.2000). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

Finally, "[t]o survive summary judgment under Title VII, the record must support an inference of a [sexually] hostile work environment and a basis for employer lia-

bility." *Ford v. West,* 222 F.3d 767, 775 (10th Cir.2000); *see also Mallinson–Montague v. Pocrnick,* 224 F.3d 1224, 1228 (10th Cir.2000).

### *Analysis*

I. *Defendant IBEW's Motion for Summary Judgment.*

Defendant IBEW makes three arguments in support of its motion for summary judgment: (1) Plaintiff fails to state a claim for relief against it under Title VII; (2) Plaintiff's Breach of Policy Claim fails as a matter of law because only the IBEW Constitution could impose any obligations upon IBEW and under the Union Constitution, Plaintiff failed to exhaust her internal union remedies thereby precluding her claim; and (3) Plaintiff's claims are time barred.

A. Plaintiff's Claims for Relief Pursuant to Title VII.

Defendant IBEW argues that it cannot be held liable for the actions of Defendant DJEATC because they are separate entities and neither is the agent of the other. Further, IBEW contends that it cannot be held liable for sexual harassment committed by its members unless it acquiesces in that harassment. In turn, IBEW asserts it could not have acquiesced in its members' alleged sexual harassment of Plaintiff because it did not have knowledge of such conduct. Plaintiff responds that IBEW and its agent, DJEATC, are liable under Title VII; the latter for acquiescing in the former's harassment of Plaintiff, which is evidenced by its knowledge of the harassment and failure to take corrective action.

In the Tenth Circuit, "labor organizations have an affirmative duty to insure compliance with Title VII." *Romero v. Union Pacific R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980). Title VII provides that it is an unlawful employment practice for a labor

organization to discriminate against any individual *on the basis of,* among other things, sex. 42 U.S.C. § 2000e–2(c)(1). Title VII also makes it an unlawful employment practice for a labor organization to limit, segregate, or classify its members on the basis of sex in any way that would deprive or tend to deprive an individual of employment opportunities. *Id.* § 2000e–2(c)(2). In addition, "it is well settled that a plaintiff may establish a violation of Title VII by showing discrimination based on sex has created a hostile or abusive working environment." *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir. 1997) (footnote omitted) *citing Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

A labor organization can be held liable under Title VII if it acquiesces in a covered entity's unlawful employment discrimination. *Seymore,* 111 F.3d at 798; *York v. Am. Tel. & Tel. Co.,* 95 F.3d 948, 956 (10th Cir.1996). The Tenth Circuit has explained that a labor organization's acquiescence in discrimination requires: "(1) knowledge that the prohibited discrimination may have occurred and (2) a decision not to assert the discrimination claim." *Id.* at 956–57. Under the first element, courts have looked to the RESTATEMENT (SECOND) OF AGENCY § 219 for guidance in determining when a covered entity is liable for sexual harassment by its members or employees. *Vinson,* 477 U.S. at 72, 106 S.Ct. 2399; *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417 (10th Cir.1987). In *Romero,* the Tenth Circuit considered it important that a labor organization and covered entity were working closely, had conferences regarding the employee's situation, and were in "the matter together" in committing the unlawful employment practice. *Romero,* 615 F.2d at 1310, 1311; *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1517 (D.Kan.1993) *aff'd* 51 F.3d 285, 1995 WL 133385 (10th Cir.1995) (unpublished). By

its nature, the determination of the second element is fact-specific.

■ Plaintiff has carried her summary judgment burden by designating specific facts that create a genuine issue for trial. First, Plaintiff has alleged that DJEATC represented IBEW in the training of apprentices, which is evidenced by the fact that IBEW and the National Electrical Contractors Association ("NECA") entered into a collective bargaining agreement that established DJEATC. (*See,* Pl.'s Opp'n to Def.'s IBEW Mot. for Summ. J., at pp. 3–7, 14). Plaintiff alleges that this collective bargaining agreement creates an agency relationship between IBEW and DJEATC because the latter was created by the agreement to train apprentices to become members of the former. Thus, IBEW's acquiescence, and participation in, the DJEATC's alleged sexual harassment contributed to Plaintiff's harm. The IBEW strenuously disputes this construction of the relationship between it and the DJEATC. However, Plaintiff's construction of the relationship between IBEW and DJEATC creates a genuine issue for trial under section 219(2)(b), (2)(d) of the RESTATEMENT (SECOND) OF AGENCY.

Second, Plaintiff points to numerous incidents of harassment by DJEATC instructors, co-employees, and fellow union members and supervisors, which altered the conditions of her enrollment in the DJEATC training program. For example, Plaintiff has presented evidence that she may have been inadequately trained and was subjected to harassment in the classroom and on the job site. (*See,* Pl.'s Opp'n to Def.'s IBEW Mot. for Summ. J., at pp. 7–11). As was the case in *Romero,* Plaintiff has pointed to facts evidencing that the IBEW and DJEATC may have been "in the matter together" in discriminating against Plaintiff on the basis of her sex. Third, Plaintiff's evidence indicates she

made numerous complaints about the sexual harassment to IBEW stewards and agents, in addition to complaining directly to DJEATC committee members and training directors. (*Id.* at pp. 9–10). Fourth, Plaintiff has demonstrated that IBEW has never taken any action against the individuals engaged in the harassment. (*Id.* at p. 13).

Based on these facts, a reasonable jury could conclude: (1) DJEATC was an agent of the IBEW; and (2) that IBEW acquiesced in Plaintiff's harassment because it had knowledge of this harassment and failed to take reasonable corrective action.

### B. Plaintiff's Breach of Policy Claim.

■ Plaintiff contends that IBEW, acting for and through its agents, breached her employment contract. Specifically, Plaintiff alleges that when she entered the Apprentice Training Program she executed an Apprentice Agreement which contained IBEW's and DJEATC's Equal Opportunity and Sexual Harassment Policies (collectively "Anti-harassment Policies"). (*See,* Pl.'s Opp'n to Def.'s IBEW Mot. for Summ. J., at pp. 4–7, ¶¶ 5–6, 14). These Anti-harassment Policies are set forth in the "Local Inside Wireman Apprenticeship and Training Standards for the DJEATC, Representing the Rocky Mountain Chapter of NECA and IBEW Local No. 68" ("Apprentice Standards"). The Apprentice Standards require the DJEATC to supply all apprentices a document entitled "Notice of the Right to Register Complaints." The Notice provides that apprentices who believe they have been discriminated against on the basis of sex may file a complaint with the DJEATC, the United States Department of Labor, the Bureau of Apprenticeship and Training, or the Equal Employment Opportunity Commission ("EEOC") (federal or state). Plaintiff claims that IBEW's breach of the Anti–Harassment Policies caused her injuries.

First, IBEW argues that the Anti–Harassment Policies are not its policies, rather they are the DJEATC's policies; therefore, they are not binding on the Union. Second, IBEW asserts that if Plaintiff is alleging that the Union violated its sexual harassment policy contained in the IBEW Constitution, that claim is barred by Plaintiff's failure to exhaust her internal union remedies under the Union Constitution.

■ Under Colorado law, an employer's (or in this case, a labor organization's) distribution to employees of handbooks or policy manuals, which contain equal employment opportunity policies, may result in the employer (or labor organization) becoming contractually bound to comply with the procedures if the employee relies on these procedures. *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1515 (10th Cir.1995) *quoting Cronk v. Intermountain Rural Elec. Ass'n,* 765 P.2d 619, 622–23 (Colo.App.1988); *Stahl v. Sun Microsystems, Inc.,* 19 F.3d 533, 536 (10th Cir. 1994). It is well established "[u]nder Colorado law, 'when the existence of a contract is in issue, and the evidence is conflicting or admits more than one inference, it is for the jury to decide whether a contract in fact exists.'" *Townsend v. Daniel, Mann, Johnson & Mendenhall,* 196 F.3d 1140, 1144 (10th Cir.1999) *quoting I.M.A., Inc. v. Rocky Mountain Airways,* 713 P.2d 882, 887 (Colo.1986); *Gomez,* 50 F.3d at 1515.

The evidence presented by Plaintiff and IBEW raises a genuine issue as to whether the Anti-harassment Policies in the Apprentice Standards are binding on the IBEW because the evidence admits more than one inference. Plaintiff presented evidence that IBEW: (1) created DJEATC, (2) required DJEATC to adopt the Apprentice Standards, which included a sexual harassment policy, and (3) DJEATC acted on behalf of the IBEW in imple-

menting, enforcing, and breaching the policies. Conversely, IBEW presented evidence that the Apprentice Standards were adopted by the DJEATC, which it contends is a separate entity from the Union. (IBEW's Br. in Supp. of Mot. for Summ. J., at pp. 4 (¶ 16) and 5–6). This action is based on diversity of citizenship; therefore, Colorado law controls the issue of whether a contract was formed and the terms and conditions of that contract. Colorado law dictates that when evidence is conflicting on the existence of a contract, the jury is the proper fact finding body to resolve the issue. Whether Plaintiff was required to exhaust internal union procedures is also a question of material fact because the Anti-harassment Policies, if found to be binding on IBEW, provide that the Plaintiff does not have to exhaust internal union remedies.

C. Whether Plaintiff's Claims are Time Barred.

■ IBEW asserts that all Plaintiff's Title VII claims are time barred. IBEW argues that its failure to oppose sex discrimination is a discrete discriminatory act (i.e., a single unlawful employment practice). (IBEW's Br. in Supp. of Mot. for Summ. J., at p. 13). Therefore, under the Supreme Court's recent decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Plaintiff was required to file a charge of discrimination within 300 days of each unlawful employment practice, i.e., each time the Union failed to oppose the alleged sex discrimination. (*Id.* at 12–13). Further, the IBEW argues that the failure to train Plaintiff because of her sex was a discrete act and a Union's alleged acquiescence in that failure to train is a distinct

violation of the law. (*Id.* at 13). Hence, because the charge of discrimination was filed against IBEW on August 11, 2000, any claims of discrimination prior to October 15, 1999 (i.e., 300 days before August 11) are time barred.[2] (*Id.* at 14). Plaintiff responds that IBEW has misread the Supreme Court's decision in *Morgan* and, in fact, the Supreme Court's decision demonstrates that Plaintiff's claims are not time barred.

In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court described Title VII's statute of limitations provision:

Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). Colorado has an entity with the authority to grant or seek relief-the Colorado Civil Rights Division; hence, a person has 300 days from the date of the unlawful employment practice to file a charge of discrimination in Colorado or the claim will be time barred.

---

**2.** IBEW also argues that Plaintiff's breach of policy (contract) claim is, in effect, a breach of the duty of fair representation, which is barred by the six-month statute of limitations

on breach of fair representation claims. This argument is rejected because Plaintiff has not alleged a breach of the Union's duty of fair representation.

In *Morgan*, the Supreme Court had to decide when an "unlawful employment practice" has occurred for purposes of Title VII's statute of limitations, 42 U.S.C. § 2000e–5(e), for both discrete discriminatory acts and hostile work environment claims. *Id.* at 2070–71. The Court held that for discrete discriminatory or retaliatory acts-which include such things as termination, failure to promote, denial of transfer or refusal to hire-the plaintiff raising the claim must file his charge within the appropriate time period–180 or 300–days as set forth in 42 U.S.C. § 2000e–5(e)(1). *Id.* at 2073, 2077.

However, the Supreme Court recognized that "hostile environment claims are different in kind from discrete acts." *Id.* The Court then noted that a Plaintiff alleging a hostile work environment must prove that the harassment was severe and pervasive enough to alter her terms and conditions of employment; hence, it was axiomatic that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 2074. Thus, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* In other words, a "charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least

one act falls within the time period." *Id.* at 2077. Hence, a federal district court's "task is to determine whether the acts about which an employee complains are part of the actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 2076.

Viewing the facts in the light most favorable to Plaintiff, this Court concludes that Plaintiff's hostile work environment claim is not time barred. Plaintiff has presented evidence that she was sexually harassed by members of the IBEW intermittently from March 1998 to November 2000. (Pl.'s Opp'n to IBEW's Mot. for Summ. J., at pp. 7–13). In fact, IBEW explicitly acknowledges that Aaron Thompson and Tim Moser (IBEW members) subjected Plaintiff to gross sexual harassment while she was employed at Tapp Electric from November 1999 to April 2000. (Def.'s Br. in Supp. of Mot. for Summ. J., at p. 2, ¶¶ 4, 8). Plaintiff filed her discrimination charge on August 11, 2000. Therefore, this Court finds one of the acts which contributed to the hostile work environment occurred after October 15, 1999; hence, Plaintiff's hostile work environment claim is not time barred.[3]

II. *Defendant Denver Joint Electrical Apprentice and Training Committee's Motion for Summary Judgment.*

Defendant DJEATC makes four arguments in support of its Motion for Summary Judgment: (1) Plaintiff cannot bring a "hostile environment" claim under Title

---

**3.** The Court notes it does not need to address the difficult question of whether a failure to train is a "discrete act of discrimination" under the Supreme Court's analysis in *Morgan*. This is a difficult question because if, for example, an employer failed to train an individual based on discriminatory reasons, this could have a continuing effect on the individual's work throughout his employment. However, Plaintiff's "failure to train" allega-

tion arises in the unique context of an ongoing four year apprentice program; that is, Plaintiff was "in training" during her entire tenure with the Union. Additionally, Plaintiff's failure to train claim is inextricably linked with her hostile work environment claim because many of the alleged acts of sexual harassment occurred while Plaintiff was being trained.

VII's Training Program provision because that section does not apply to the "terms, conditions, and privileges of employment" in an apprenticeship program; (2) even if "hostile environment" principles apply, the behavior of which Plaintiff complains is not actionable under Title VII; (3) Plaintiff's claims prior to October 1999 are time barred; and (4) Plaintiff has not stated a claim for breach of policies (contract).

**A. Maintaining a Hostile Work Environment Claim under 42 U.S.C. § 2000e–2(d).**

■ Defendant argues that, consistent with the Supreme Court's decision in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), a hostile work environment claim may only be asserted under 42 U.S.C. § 2000e–2(a)(1) [4] because that is the provision the Supreme Court was interpreting when it held hostile work environment claims were actionable under Title VII. According to DJEATC, this is because a hostile environment claim is actionable only because the pervasive harassment alters the terms, conditions, or privileges of a plaintiff's employment. (Def. DJEATC Mot. for Summ. J., at p. 7). Plaintiff responds that the plain language of 42 U.S.C. § 2000e–2(d), the EEOC's interpretive guidelines, and logic compel a different conclusion.

Sexual harassment is a form of discrimination prohibited by Title VII. *Vinson*, 477 U.S. at 65–67, 106 S.Ct. 2399; 29 C.F.R. § 1604.11(a). Title VII's Training Programs provision makes it an

> unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of ... sex ... in admission to, *or employment in,* any program established to provide apprenticeship or other training.

42 U.S.C. § 2000e–2(d) (emphasis added). The plain language of this provision prohibits sex discrimination against an individual who is "employed in" an apprenticeship training program. *See also,* 29 C.F.R. § 30.1 (prohibiting discrimination on the basis of sex in apprenticeship programs).

The EEOC guidelines provide that sexual harassment constitutes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a).[5] The EEOC Compli-

---

**4.** In pertinent part, 42 U.S.C. § 2000e–2 provides: "(a) Employer practices. It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...."

**5.** Contrary to DJEATC's suggestion, a sexually hostile work environment claim is not limited to 42 U.S.C. § 2000e–2(a)(1) ("section 703" of Title VII). The EEOC interpretive guidelines

provide "harassment on the basis of sex is a violation of section 703 of [T]itle VII." 29 C.F.R. 1604.11(a). Thus, sexual harassment, which constitutes discrimination if it creates a hostile working environment, is prohibited under all subsections of section 703, not simply subsection 703(a)(1). In fact, the Tenth Circuit has implicitly acknowledged this because it has indicated that a labor organization may be liable under section 703(c)(1) for acquiescing in an employer's sexual harassment to the point that it constitutes a hostile work environment. *See Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797–98 (10th Cir.1997). Under DJEATC's interpretation,

ance Manual instructs that a "covered entity may not discriminate with respect to an apprenticeship or other training program, *regardless of whether the program is the product of an employment relationship.*" 2 EEOC COMPLIANCE MANUAL § 2-II (2000) (emphasis in original).[6] Hence, an individual "participating in" a covered entity's training or apprenticeship program can maintain a Title VII action if he or she is discriminated against (i.e., sexually harassed) while in the training program. *Id.* Further, if the training program is required prior to employment, as is the case with an apprenticeship program, sexual harassment in training during the apprenticeship program may also constitute discrimination in hiring. *Id.* In sum, an individual subjected to sexual harassment while employed in a training program, either during in-class or on-the-job training, may assert a claim under Title VII if the harassment is severe and pervasive enough to constitute a hostile work environment.

DJEATC admits it accepted Plaintiff into its training program. (Def. DJEATC Br. in Supp. of Mot. for Summ. J., at p. 2). The DJEATC provides instructors for in-class training who are responsible for enforcement of its sexual harassment policies. (Pl.'s Opp. to Def. DJEATC's Mot. for Summ. J., at pp. 8–9). The DJEATC exercises control over apprentices while they in the classroom and performing on-the-job training. (*Id.* at pp. 8–11). Plain-

tiff has presented evidence that she was sexually harassed while participating in DJEATC's training program to become an electrical apprentice, both in the classroom and during on-the-job training. (*Id.* at 10–17). Therefore, Plaintiff may assert a sexual discrimination claim under 42 U.S.C. § 2000e–2(d) because she has pointed to facts sufficient to give rise to an inference that the harassment she endured while enrolled in DJEATC's training program created a hostile work environment.

B. Whether Plaintiff's Hostile Work Environment Claim is Actionable under Title VII.

■ DJEATC argues that Plaintiff's evidence regarding her hostile work environment claim "fares poorly" because the "periodic (one or two times a class period)" behavior was "designed to entertain" the class and limited to "juvenile and boorish joke telling." Plaintiff responds that the harassment was sufficiently severe and pervasive to constitute a hostile work environment and that the DJEATC knew about the behavior and failed to respond in a reasonable manner; therefore, it is liable under Title VII.

The Tenth Circuit has explained the standards necessary to state a claim for a sexually hostile work environment:

To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she was a

---

this would be impossible because section 703(c) of Title VII, which imposes liability on labor organizations for sex discrimination, does not contain the language "with respect to his compensation, terms, conditions, or privileges of employment ...." Therefore, DJEATC's argument that hostile work environment claims are limited to section 703(a)(1) of Title VII is unpersuasive.

6. DJEATC also argues in its reply brief that the EEOC guidelines only recognize a hostile work environment claim "in the guidelines

governing *employers.*" (Def. DJEATC Reply Br. in Supp. of Mot. for Summ. J., at pp. 5–6). However, the EEOC guidelines define an "employer" as "any person or organization employing an apprentice whether or not the apprentice is enrolled with such person or organization or with some other person or organization." 29 C.F.R. § 30.2(b). Additionally, the Supreme Court has instructed that, while not binding, EEOC guidelines should be accorded deference. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 62, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

member of a protected group; (2) she was subject to unwanted harassment; (3) the harassment was based on sex; and (4) the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. *Seymore v. Shawver & Sons*, 111 F.3d 794, 797 (10th Cir.1997).[7] Under the fourth element, "an actionable hostile work environment exists only when a plaintiff is subjected to sexual harassment sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 798 (internal quotations, citations, and brackets omitted). In the context of a hostile work environment under Title VII's Training Programs provision, the harassment must be so severe or pervasive to alter the conditions of the victim's enrollment in the program and create an abusive working environment. In determining the severity and pervasiveness of sexual harassment, it is appropriate to consider the employer's response to a plaintiff's complaints of sexual harassment; moreover, evidence of an employer's "lackadaisical attitude towards harassment occurring within its walls" is sufficient evidence on which a reasonable jury can infer the existence of a sexually hostile environment. *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1242 (10th Cir.1999) *quoting Baty v. Willamette Indus. Inc.*, 985 F.Supp. 987, 994 (D.Kan. 1997).

Nevertheless, a covered entity will not be liable for the hostile work environment unless the plaintiff identifies a basis for the covered entity's liability. *Ford v. West*, 222 F.3d 767, 775–76 (10th Cir.2000). The Tenth Circuit has identified three bases for holding a covered entity liable for the existence of a hostile work environment:

[A Plaintiff must establish:] (1) the employer failed to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known; (2) the unlawful actions of the harassing employee were within the scope of his employment; *or* (3) the harassing employee purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he or she was aided in accomplishing the tort by the existence of the agency relationship.

*Seymore*, 111 F.3d at 797 (internal quotations, citations, and brackets omitted) (emphasis in original); *see also West*, 222 F.3d at 775–76.

Plaintiff has pointed to evidence which establishes the first three elements of a hostile work environment claim because she is a woman (i.e., in a protected class), subjected to unwelcome harassment (i.e., she complained on numerous occasions in an extremely upset manner) based on her sex (i.e., she was subjected to scatological gestures and comments about women). (Pl.'s Opp: to Def. DJEATC's Mot. for Summ. J., at pp. 10–16). Plaintiff has also pointed to evidence, which the DJEATC largely admits, that would indicate the harassment was severe and pervasive enough to alter the conditions of her enrollment in the program. (*Id.;* Def. DJEATC Br. in Supp. of Mot. for Summ. J., at pp. 14–16).

As to the severity, a few examples will suffice. Allegedly, during classroom train-

---

**7.** As noted above, the fourth element of this test is not tied directly to 42 U.S.C. § 2000e–2(a)(1), which the Tenth Circuit implicitly found in *Seymore*. *See supra* note 5; *Thompson v. United Transp. Union*, No. 99–2288–JWL, 2000 WL 1929963, *6, 2000 U.S. Dist. LEXIS 19244, *20 (D.Kan. Dec. 19, 2000) (noting the Tenth Circuit in *Seymore* assumed union representatives who engage in sex discrimination in violation of 42 U.S.C. § 2000e–2(c)(1) expose the union to direct liability for a sexually hostile work environment claim).

ing fellow students would, among other things: (1) routinely write ribald remarks on her work papers; (2) make gestures imitating oral sex at plaintiff; and (3) perform the "titty dance."[8] (*Id.*). These incidents caused Plaintiff to complain in an "extremely upset" manner to DJEATC management-level employees. (*See id.*). DJEATC appears to argue that this conduct was not severe or pervasive because it was periodic (one or two times per class period) entertainment for the class.[9] (Def. DJEATC Br. in Supp. of Mot. for Summ. J., at p. 16). Plaintiff also allegedly suffered harassment while performing on-the-job training, such as being: (1) told women were not wanted in the trade; (2) assigned to perform menial tasks in contravention of DJEATC's training policy and in comparison to similarly situated male trainees; (3) told she should give fellatio lessons at the union hall; and (4) called scurrilous names, among other things. (Pl.'s Opp. to Def. DJEATC's Mot. for Summ. J., at pp. 10–16). This evidence is sufficient to give rise to an inference of a sexually hostile work environment.

Further, Plaintiff's evidence indicates that she complained on numerous occasions about the on-the-job and classroom harassment to her instructors and directly to the directors of the DJEATC, who had a duty to enforce the DJEATC's sexual harassment policy. (*Id.*). Plaintiff has also presented evidence that notwithstanding these numerous complaints to DJEATC instructors and directors, no reasonable, or for that matter any, corrective action was taken. (*Id.*). Therefore, the Plaintiff has presented evidence that indicates a genuine issue of material fact remains because the record supports an inference that a sexually hostile work environment existed and a basis for DJEATC's liability.

**C. DJEATC's Other Arguments.**

DJEATC also argues, like IBEW, that Plaintiff's claims are time barred by Title VII's statute of limitations and that Plaintiff has failed to state a claim for breach of policies (or contract). (Def. DJEATC Br. in Supp. of Mot. for Summ. J., at pp. 17–24). These arguments are essentially the same as those made by IBEW and are rejected for the same reasons. The Court is also aware of the arguments made by DJEATC in its Reply Brief in Support of Motion for Summary Judgment; however, because all the arguments except "Section II" are substantially the same as in its original motion, those arguments are also rejected. With respect to Section II, the Court, construing Plaintiff's Complaint liberally in accord with the modern discovery rules, finds it provided DJEATC with fair notice of the nature of the claims asserted by Plaintiff. *See* Fed.R.Civ.P. 8.

**III.** *Defendant DJEATC's Motion for Summary Judgment Regarding Plaintiff's Demand for Back and Front Pay.*

■ Defendant DJEATC argues that it is entitled to summary judgment with respect to the back and front pay Plaintiff seeks in her request for relief because the "undisputed facts" demonstrate Plaintiff rejected unconditional offers from DJEATC to reinstate her in the apprenticeship program. (Def. DJEATC's Mot. for Summ. J. Regarding Pl.'s Demand for Back and Front Pay, at pp. 3–6). Plaintiff

---

**8.** The "titty dance" apparently consists of mimicking a female exotic dancer's routine.

**9.** The record is not clear on how many classes Plaintiff attended, however, once or twice per *class period* for nearly two years is ostensibly pervasive. DJEATC's argument that this activity constituted "entertainment" is so far contrary to law it does not warrant response. *See Baty v. Willamette Indus., Inc.*, 172 F.3d 1232 (10th Cir.1999).

responds that the facts regarding the reinstatement offer are not "undisputed" and, even if they were, an employee's refusal to accept reinstatement does not automatically preclude relief if she has valid reasons for refusing such an offer. (Pl.'s Opp. to Def. DJEATC's Mot. for Summ. J. Regarding Pl.'s Demand for Back and Front Pay, at pp. 7–11). Initially, the Court notes that there are very few "undisputed facts" in this case; comparing DJEATC's Motions and Plaintiff's responses, there have only been twelve facts identified by the parties as "undisputed."

If a plaintiff is constructively discharged by an employer's discrimination, he or she may be entitled to an award of reinstatement, back pay, or front pay under Title VII. 42 U.S.C. § 2000e–5(g)(1). Of these three damage awards, reinstatement is preferable. *Bruno v. Western Elec. Co.*, 829 F.2d 957, 966 (10th Cir.1987). However, "the equitable remedy of front pay may be awarded where an employer has created such a hostile work environment that reinstatement is not a reasonable remedy . . . ." *Griffith v. Colo. Div. of Youth Serv.*, 17 F.3d 1323, 1329 (10th Cir.1994). The Tenth Circuit has held that it is the duty of the court, and not the jury, to calculate the amount of front pay under 42 U.S.C. § 2000e–5(g). *McCue v. Kan. Dep't of Human Resources*, 165 F.3d 784, 792 (10th Cir.1999). Front pay is granted to make a victim of discrimination whole from the continuing future effects of that discrimination. *Mallinson–Montague v. Pocrnick*, 224 F.3d 1224, 1237 n. 17 (10th Cir.2000).

Nevertheless, an employee who has been discharged by unlawful discrimination must use due diligence to reasonably mitigate his or her losses. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). The continuing effects of discrimination are generally remedied when an employer who unlawfully discharged an employee makes an un-

conditional offer to reinstate the employee. *Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir.1986). However, an employee's refusal to accept reinstatement does not automatically preclude an award of front pay if she has valid reasons for the refusal. *Id.* In fact, "[w]hen the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible, reinstatement must give way to front pay." *Bruno v. Western Elec. Co.*, 829 F.2d 957, 966 (10th Cir.1987).

Whether the plaintiff was constructively discharged and then validly refused an offer of reinstatement is ordinarily a question of fact for the jury. *Apgar v. Wyoming*, No. 99–8029, 2000 WL 1059444, *9, 2000 U.S.App. LEXIS 18633, *29 (10th Cir.2000) (constructive discharge); *Richardson v. Blue Cross/Blue Shield of Kan., Inc.*, 196 F.Supp.2d 1174, 1185 (D.Kan. 2002) (constructive discharge); *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1551 (11th Cir.1984) (valid refusal of reinstatement). The Tenth Circuit has elucidated several guiding factors for determining when front pay in lieu of reinstatement is appropriate because of the existence of a sexually hostile work environment. These factors include whether: (1) the record supports a finding that the plaintiff could return to work without an atmosphere of hostility; (2) the employer had a custom or habit of condoning or permitting sexual harassment to occur in the workplace; (3) the employer has established and maintained over a period of years a continuing sexually discriminatory policy respecting employment actions; and (4) the relationship between the parties has been irreparably damaged. *Griffith*, 17 F.3d at 1329; *Acrey v. Am. Sheep Indus.*, 981 F.2d 1569, 1576 (10th Cir. 1992). In instances of severe and pervasive sexual harassment over a period of years when the employer has refused to

take corrective action, an award of front pay in lieu of reinstatement may be appropriate. *Baty v. Willamette Indus., Inc.,* 985 F.Supp. 987, 1000 (D.Kan.1997) *aff'd* 172 F.3d 1232 (10th Cir.1999).

Plaintiff has carried her burden of alleging facts sufficient to demonstrate, under an objective test, that a reasonable jury could have viewed her working conditions as intolerable and that she had no other choice than to quit her enrollment at the DJEATC. (Pl.'s Opp. to Def. DJEATC's Mot. for Summ. J. Regarding Pl.'s Demand for Back and Front Pay, at pp. 2–7). Additionally, a reasonable jury could find that DJEATC exhibited such an extreme indifference to the sexually hostile working environment that a productive and amicable working relationship between Plaintiff and DJEATC would not be possible. (*Id.*). This, coupled with the abundance of disputed material facts on the issue, is sufficient to preclude summary judgment.

### Conclusion

For all the aforementioned reasons, the Court finds that the Plaintiff has carried her burden of designating specific facts that raise a genuine issue of material fact for trial and that the record supports an inference of a sexually hostile work environment and a basis for IBEW's and DJEATC's liability. Therefore, IBEW's Motion for Summary Judgment, DJEATC's Motion for Summary Judgment, and DJEATC's Motion Regarding Plaintiff's Demand for Back and Front Pay are **DENIED.**